1               **UNITED STATES DISTRICT COURT**

2         **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

3         **HONORABLE JEAN P. ROSENBLUTH, U.S. MAGISTRATE JUDGE**

4

UNITED STATES OF AMERICA,          )

5                                   )   **Certified Transcript**
                                    )
6      Plaintiff,                   )   Case No.
                                    )   CV case no. 19-05397
7          vs.                      )   JFW JPR
                                    )
8   CHRISTOPHER PHILIP AHN,         )
                                    )
9      Defendant.                   )
   _____)

10

11

12

13       REPORTER'S PARTIAL TRANSCRIPT OF PROCEEDINGS
                         BAIL HEARING
14               FRIDAY; JUNE 28, 2019
                         9:00 a.m.
15            LOS ANGELES, CALIFORNIA

16

17

18

19

20

21

22

23

24                SHERI S. KLEEGER, CSR 10340
            FEDERAL OFFICIAL COURT REPORTER
            350 WEST 1ST STREET, SUITE 4455
25            LOS ANGELES, CA 90012-4565
                   Mykuippo@aol.com

**APPEARANCES OF COUNSEL:**


**FOR THE PLAINTIFF:**

      UNITED STATES OF AMERICA
      AUSA - OFFICE OF THE U.S. ATTORNEY
      BY:  JOHN J. LULEIAN, AUSA
      CRIMINAL DIVISION - US Courthouse
      312 North Spring Street
      12th Floor
      Los Angeles, CA 90012

**FOR THE DEFENDANT:**

      BIRD MARELLA BOXER WOLPERT NESSIM
      DROOKS LINCENBERG and RHOW
      BY:  NAEUN RIM, ATTORNEY AT LAW
          EKWAN E. RHOW, ESQUIRE
          JUMIN LEE, ESQUIRE
      1875 CENTURY PARK EAST
      23RD FLOOR
      LOS ANGELES, CA  90067

LOS ANGELES, CALIFORNIA; FRIDAY, JUNE 28, 2019

9:00 A.M.

- - -

THE CLERK:  Please remain seated.  This
United States District Court is now in session.  The
Honorable Jean P. Rosenbluth, United States Magistrate
Judge presiding.
Calling Case No. CV 19-5397-JFW:  United States of
America versus Christopher Philip Ahn.
Counsel, please state your appearances for the record.
            MR. LULEJIAN:  Good morning, Your Honor.
John Lulejian on behalf of the United States of America.
            THE COURT:  All right.  Hello.
            MS. RIM:  Good morning, Your Honor.
            Naeun Rim on behalf of Christopher Ahn, who
is present in custody.
            THE COURT:  All right.  Thank you.
            MR. LEE:  Good morning, Your Honor.
            Christopher Jumin Lee, also on behalf of
Mr. Ahn.
            THE COURT:  Thank you.
            MR. RHOW:  Good morning, Your Honor.
            Ekwan Rhow on behalf of Mr. Ahn, as well.

```
10:04:26   1              THE COURT:  All right.  And hello to you as
10:04:27   2    well.
10:04:28   3              I had asked that a pretrial services --
10:04:31   4    okay, she is here.  So, Ms. Kerbeck, correct?
10:04:37   5              THE PROBATION OFFICER:  Correct, Your Honor.
10:04:38   6              THE COURT:  All right.  Thank you.  I'll let
10:04:38   7    you know if we need you.
10:04:39   8              All right.  So we are here on the relator's
10:04:44   9    application for review of my denial of the prior
10:04:50  10    reconsideration order.  I would like to conduct as much
10:04:53  11    of this hearing as possible in public.  To the extent
10:04:58  12    that I decide to order bail with a third-party custodian
10:05:01  13    and I agree with the relator that -- the identities of
10:05:06  14    those potential custodians should reman under seal, I
10:05:09  15    can seal the courtroom at that time.
10:05:12  16              But I would ask until that time the parties
10:05:14  17    be as circumspect as possible in terms of not
10:05:17  18    specifically mentioning anyone's name and just speaking
10:05:21  19    generally.  But if there's a problem with that, anyone
10:05:25  20    can let me know.
10:05:26  21              Before we get started, are there any
10:05:27  22    preliminary issues anybody wants to raise?
10:05:28  23              MR. LULEJIAN:  Just one preliminary issue,
10:05:30  24    Your Honor.  I understand it's in the power of the Court
10:05:31  25    to close the courtroom.  But, as Your Honor is well
```

10:05:33  1   aware, the United States has to object to the closing of

10:05:36  2   the courtroom.

10:05:37  3             THE COURT:  Well, I'm not doing it yet.

10:05:39  4   We'll get.  But --

10:05:39  5             MR. LULEJIAN:  And should the Court decide

10:05:41  6   to do that, I would just ask that my objection be noted

10:05:44  7   on the record.

10:05:45  8             THE COURT:  All right.  Well, I'll give you

10:05:46  9   a chance to argue, because what I would like to discuss

10:05:49  10  up front is the relator's application to keep under seal

10:05:53  11  the names of the proposed third-party custodians.

10:05:57  12            I wanted to give you a little bit of my

10:05:58  13  thinking on that, and then I can hear from whoever wants

10:06:01  14  to speak.

10:06:01  15            So I did check with pretrial services, and

10:06:04  16  it is possible to file bonds under seal or to redact

10:06:08  17  names, though of course they would be known to pretrial

10:06:12  18  services and the Government.  And I -- my own view is

10:06:16  19  that they would have to be known -- to the extent any

10:06:19  20  sureties are different from the third-party custodians,

10:06:21  21  I believe that under our local rules the names of the

10:06:24  22  third-party custodians would have to be known to the

10:06:30  23  sureties because the sureties have to approve any bond

10:06:33  24  and approve any modification of it, and so I think they

10:06:35  25  would have to know who the third-party custodians are.

|  |  |  |
|---|---|---|
| 10:06:41 | 1 | As the relator pointed out, to the extent I |
| 10:06:44 | 2 | want to question them, which I would, I would have to -- |
| 10:06:48 | 3 | I could of course seal the courtroom for that purpose. |
| 10:06:51 | 4 | But let me ask the relator, if I denied the |
| 10:06:56 | 5 | request for bail altogether, then there would be no need |
| 10:07:00 | 6 | at that point to seal the application to file their |
| 10:07:04 | 7 | names under seal. |
| 10:07:05 | 8 | Do agree with that? |
| 10:07:07 | 9 | MS. RIM:  Your Honor, we would ask that it |
| 10:07:08 | 10 | be at least be granted for the record, you know, so |
| 10:07:12 | 11 | that -- |
| 10:07:12 | 12 | THE COURT:  All right.  What do you mean |
| 10:07:13 | 13 | exactly? |
| 10:07:14 | 14 | MS. RIM:  The only thing we've asked the |
| 10:07:16 | 15 | Court to seal is the unredacted version and it contains |
| 10:07:19 | 16 | some facts that we want to be part of the record.  So to |
| 10:07:22 | 17 | the extent that the Court denies bail, we would still |
| 10:07:24 | 18 | want that to be filed so that we could rely on it as |
| 10:07:27 | 19 | part of the record. |
| 10:07:29 | 20 | THE COURT:  It would be filed.  But my |
| 10:07:30 | 21 | question to you is, would there be any reason for it to |
| 10:07:34 | 22 | have to be filed under seal if they're not going to |
| 10:07:38 | 23 | serve as third-party custodians -- |
| 10:07:40 | 24 | MR. LULEJIAN:  If the Court denies bail |
| 10:07:42 | 25 | altogether?  Or -- |

10:07:42   1          THE COURT:  Right.  That's my question.

10:07:43   2   Which I am not doing yet.  But --

10:07:43   3          MS. RIM:  We would submit that we would

10:07:45   4   still want that to be sealed because we may appeal and

10:07:50   5   offer that on appeal.

10:07:52   6          THE COURT:  But I could -- I could stay in

10:07:55   7   the order denying the -- both -- both the application

10:08:00   8   for reconsideration of bail and the sealing application.

10:08:04   9   I could stay those orders so that if you did appeal --

10:08:09  10   I'm just -- let's say I deny bail and we're, you know,

10:08:13  11   you've gone up to the Supreme Court, and they agree with

10:08:15  12   me.  Would there be any reason to keep under seal the

10:08:20  13   names of the proposed custodians?  I don't think so.

10:08:26  14          MS. RIM:  If the Supreme Court denies bail

10:08:29  15   then no, Your Honor.

10:08:30  16          THE COURT:  All right.  All right.  So we'll

10:08:32  17   get there when we get there.

10:08:33  18          So I will say that as to sealing then -- and

10:08:35  19   I'll hear from Mr. Lulejian after I say this -- I do

10:08:39  20   think that it's appropriate to -- to the extent that I

10:08:42  21   grant bail with a third-party custodian, I do think it's

10:08:45  22   appropriate to keep their names redacted or under seal.

10:08:49  23          The reasoning for that is that the

10:08:51  24   Government has acknowledged the death threats against

10:08:54  25   the relator, Mr. Ahn, and I don't see any purpose in

10:09:00  1   needlessly endangering third parties.  But I don't

10:09:03  2   accept the Government's argument that that means then

10:09:06  3   that Mr. Ahn himself is a danger to the community.  It

10:09:09  4   doesn't.

10:09:10  5           It means that whoever is trying to get to

10:09:12  6   Mr. Ahn is a danger to the community.  And I think

10:09:16  7   there's an inconsistency in the Government's argument,

10:09:19  8   because the Government all the time wants the Court to

10:09:22  9   release low level -- or people who in a particular crime

10:09:25  10  have not been a major player but who clearly, based on

10:09:30  11  their criminal history, or whatever, would be a danger

10:09:32  12  to the community, but the Government wants us to release

10:09:34  13  them because they are cooperating or for whatever

10:09:39  14  reason.  So by that token, then, those people would

10:09:43  15  always -- and let's say that person, their cooperation

10:09:47  16  becomes known and they are green-lighted, that person

10:09:50  17  then would be a danger to whoever they're living with or

10:09:53  18  the community because they've been green-lighted by some

10:09:56  19  third party.  So I think there's an inconsistency there.

10:10:00  20          So I will say, though, that it would

10:10:02  21  certainly be my duty to ensure that any third-party

10:10:06  22  custodian who is going to take on this obligation

10:10:11  23  understands the risk to that person and any family they

10:10:15  24  might have, and I would certainly do that.

10:10:18  25          I don't -- I'm not sure I understand the

| | | |
|---|---|---|
| 10:10:22 | 1 | Government's argument about the Bail Reform Act, so |
| 10:10:25 | 2 | maybe Mr. Lulejian can explain.  But I certainly |
| 10:10:28 | 3 | understand that the Bail Reform Act does not apply here; |
| 10:10:32 | 4 | but my understanding is that the ability to place |
| 10:10:34 | 5 | somebody with a third-party custodian comes from common |
| 10:10:38 | 6 | law hundreds of years ago and it preceded the Bail |
| 10:10:43 | 7 | Reform Act.  So if I were to appoint a third-party |
| 10:10:47 | 8 | custodian, it would not be based on the Bail Reform Act |
| 10:10:51 | 9 | but based on the common law that's existed for hundreds |
| 10:10:53 | 10 | of years. |
| 10:10:54 | 11 | And I will say just as a coda to all of |
| 10:10:57 | 12 | this, I don't see under any scenario a need to seal the |
| 10:11:01 | 13 | information related simply to people who are putting up |
| 10:11:07 | 14 | real property in support of the bond, in other words, |
| 10:11:11 | 15 | just people who are sureties and not third-party |
| 10:11:14 | 16 | custodians.  But if the relator wants to convince me |
| 10:11:18 | 17 | otherwise they can try. |
| 10:11:20 | 18 | So, Mr. Lulejian, do you have anything you |
| 10:11:22 | 19 | want to say? |
| 10:11:24 | 20 | MR. LULEJIAN:  I'm certainly happy to |
| 10:11:26 | 21 | address anything, Your Honor. |
| 10:11:28 | 22 | I think Your Honor's hit on the point that |
| 10:11:29 | 23 | the Court has recognized that the Bail Reform Act does |
| 10:11:31 | 24 | not apply in these cases. |
| 10:11:33 | 25 | Certainly, common law allows you to do that. |

| | | |
|---|---|---|
| 10:11:34 | 1 | But the Government noted that the relator pointed |
| 10:11:37 | 2 | specifically to a provision of the Bail Reform Act that |
| 10:11:40 | 3 | was used as a point of definition in the Sidali case, |
| 10:11:44 | 4 | and we wanted to make it clear to the Court that the |
| 10:11:46 | 5 | Bail Reform Act did not apply, and to the extent that it |
| 10:11:49 | 6 | used the analysis -- although some courts have said you |
| 10:11:52 | 7 | shouldn't even look at the analysis under 3142(g).  That |
| 10:11:56 | 8 | the Court needed to proceed with caution, as I'm sure |
| 10:11:59 | 9 | Your Honor is going to do.  Bu we wanted to make that, |
| 10:12:03 | 10 | at least that point -- at least that was the reasoning |
| 10:12:04 | 11 | behind that argument, Your Honor. |
| 10:12:06 | 12 |             THE COURT:  All right. |
| 10:12:08 | 13 |             Ms. Rim, did you have anything you wanted to |
| 10:12:11 | 14 | say? |
| 10:12:11 | 15 |             MS. RIM:  Actually, Your Honor, Mr. Lee, he |
| 10:12:14 | 16 | wrote this.  So -- |
| 10:12:15 | 17 |             MR. LEE:  I can address that issue, Your |
| 10:12:17 | 18 | Honor. |
| 10:12:17 | 19 |             THE COURT:  Sure. |
| 10:12:18 | 20 |             MR. LEE:  Your Honor, I think you've got |
| 10:12:22 | 21 | this exactly right.  You are the presiding judge over |
| 10:12:25 | 22 | these proceedings.  You have -- in here -- we can call |
| 10:12:27 | 23 | it in here an authority.  We can call it common law. |
| 10:12:29 | 24 | But you have the authority to set bail and set the |
| 10:12:32 | 25 | conditions for bail. |

10:12:33  1          Now, to the extent that we mentioned the

10:12:35  2    Bail Reform Act, it wasn't to argue that it should apply

10:12:39  3    substantively to extradition proceedings.  It was merely

10:12:41  4    to say that you can use it as a reference, because there

10:12:43  5    is no corresponding statute that apply specifically to

10:12:47  6    extradition proceedings.

10:12:48  7          Now, I want to note that if the Government's

10:12:50  8    argument is that you can't look at the Bail Reform Act

10:12:52  9    at all and therefore you can't appoint a third-party

10:12:56  10   custodian simply because it's listed in the Bail Reform

10:12:58  11   Act, then that would proscribe you from imposing all

10:13:01  12   bail conditions listed in 18 U.S. Code 3142(c).

10:13:05  13          THE COURT:  Yes, I'm not going with that

10:13:07  14   argument.  So --

10:13:08  15          MR. LEE:  Thank you, Your Honor.

10:13:10  16          THE COURT:  All right.  Thank you.

10:13:10  17          MR. LULEJIAN:  I don't think the

10:13:12  18   Government's actually made that argument.

          19          THE COURT:  Okay.  I get it.

10:13:12  20          MR. LULEJIAN:  And just for the record, Your

10:13:13  21   Honor -- and I don't mean to get on semantics, but

10:13:16  22   there's been a number of semantics in this case.

10:13:17  23          When the relator says that the Court

10:13:19  24   specifically invoked 3142, and then the provision with

10:13:23  25   that, there's a substantial difference between saying,

10:13:26  1   oh, well, we're not talking about the Bail Reform Act

10:13:28  2   applying.

10:13:29  3              I mean, we understand that the Court has its

10:13:31  4   mechanism out there.  It can look at it.  We have no

10:13:34  5   objection to the Court looking at it, at least pursuant

10:13:37  6   to what the law says.  But specifically invoking it in

10:13:40  7   this circumstance as counsel says -- I'm sorry -- as the

10:13:43  8   relator set forth in his papers is inappropriate.

10:13:45  9              MR. LEE:  Your Honor, we --

10:13:47  10             THE COURT:  You know what, this really

10:13:49  11  doesn't matter.  And so I -- you know, let's just get to

10:13:51  12  the heart of this.

10:13:52  13             MR. LEE:  Thank you, Your Honor.

10:13:53  14             THE COURT:  All right.  Thank you.

10:13:53  15             And I just want to say for the record that I

10:13:55  16  was at an event yesterday where Mr. Lulejian was

10:13:59  17  present, but I did not speak to him so I'll just put

10:14:02  18  that there on the record.

10:14:04  19             All right.  So now I do want to get to -- so

10:14:11  20  I do think it's appropriate, to the extent I grant bail,

10:14:14  21  to seal those names.  But since I haven't yet gotten to

10:14:18  22  the decision concerning bail, I'm not yet ruling on your

10:14:22  23  motion.  But I am inclined to grant it if I grant bail.

10:14:26  24             MR. LULEJIAN:  Your Honor, one question.

10:14:27  25  Has Your Honor had an opportunity to look at the formal

10:14:30   1   filing by --

10:14:30   2                  THE COURT:  I read the entire thing, every

10:14:32   3   single page.

10:14:33   4                  MR. LULEJIAN:  Okay.  And with respect to

10:14:35   5   that, does it change your analysis with respect to the

10:14:38   6   special circumstances?

10:14:39   7                  THE COURT:  Well, that's about what I'm

10:14:40   8   going to get to.

           9                  MR. LULEJIAN:  Okay.  Thank you, Your Honor.

10:14:42  10                  THE COURT:  All right.  So -- and I did also

10:14:42  11   read, Mr. Lulejian, although I -- once I started to read

10:14:46  12   it, I recalled that I had read it before and had

10:14:46  13   forgotten about it.

10:14:48  14                  I did read the case that you cited last

10:14:50  15   time, the Santos en banc case, and, if anything, I think

10:14:57  16   it confirms that my analysis was correct.  Because what

10:14:59  17   the Santos case says is that it is -- that a court

10:15:02  18   should, and, of course, this is as to probable cause,

10:15:05  19   and I understand I'm not making any probable cause

10:15:08  20   determination now.  But I think it informs this bail

10:15:12  21   consideration.

10:15:13  22                  I am to consider the competence of the

10:15:16  23   evidence, not any contradictory evidence, but if the

10:15:20  24   evidence is itself inherently not competent that is

10:15:24  25   something I am supposed to consider.

10:15:26   1          And in Santos the evidence was not competent

10:15:29   2   because the two witnesses had -- had both recanted their

10:15:33   3   prior statements but also said that they did so because

10:15:36   4   they had been tortured.  And that -- the torture aspect

10:15:40   5   was something that the Santos court said that the

10:15:43   6   extradition court should have considered.

10:15:45   7          Here, the question concerning the competence

10:15:47   8   of the evidence comes from another source, not from

10:15:49   9   anybody alleging that they were tortured.  But it comes

10:15:52  10   from our own state department saying that certain

10:15:56  11   evidence that comes directly from North Korea is not

10:16:01  12   necessarily competent.

10:16:03  13          Now, again, I'm not -- I'm not making that

10:16:04  14   finding now.  What I am saying is that it's a special

10:16:08  15   circumstance; it's an unusual special circumstance that

10:16:11  16   evidence in this case is coming from witnesses,

10:16:17  17   high-level diplomates or officials in the North Korean

10:16:22  18   government, and I do think that's a special

          19   circumstance.

10:16:25  20          I would note, also, that in the formal

10:16:27  21   request for extradition, I thought it was, I'll just say

10:16:29  22   interesting that every single one those witness

10:16:33  23   statements were given with the highest level diplomat

10:16:38  24   who was also there present during the crimes being

10:16:41  25   present and being used as the interpreter.

10:16:44  1              You know, that to me is -- is -- so it's not
10:16:48  2    like these statements were given to the Spanish police
10:16:54  3    completely independently by -- I mean the whole reason,
10:16:56  4    it seems to me, that we don't trust the North Korean
10:16:59  5    government is because of the -- the findings that our
10:17:05  6    state department has made and that are codified in
10:17:08  7    statute that, you know, there are human rights abuses,
10:17:11  8    et cetera, et cetera.
10:17:13  9              So for these statements to -- all of them,
10:17:15  10   all of the statements from the North Korean witnesses to
10:17:17  11   have been given with the presence of the commercial
10:17:20  12   attache, not only with his presence, but with him acting
10:17:24  13   as the interpreter, I find that's part of the special
10:17:27  14   circumstance as well.
10:17:29  15             I also noted that there was not any real
10:17:32  16   corroboration of the injuries caused by these alleged
10:17:36  17   blows.  The formal request for extradition provides a
10:17:41  18   lots of photos, but there are no photos of anybody's
10:17:45  19   injuries.
10:17:47  20             Now, I understand that, you know, in an
10:17:48  21   extradition proceeding hearsay is acceptable, but at
10:17:51  22   some point it sort of falls into this special
10:18:00  23   circumstance.  There were no medical records provided.
10:18:02  24   Nothing.
10:18:05  25             So the -- from my perspective, reading the

10:18:11  1    formal request for extradition, the -- the only evidence

10:18:15  2    of injuries comes from these statements that were made

10:18:16  3    by the North Korean diplomats.

10:18:18  4            So when you -- I think last time I gave a

10:18:24  5    little bit of short shrift to the relator's argument

10:18:30  6    that -- I think I saw it a little myopically, the

10:18:34  7    argument about the availability of bail in the other

10:18:36  8    country.

10:18:36  9            I still believe that that is not a basis,

10:18:39  10   that is not a special circumstance.  But here, you layer

10:18:44  11   on top of that the fact that Mr. Ahn faces -- and the

10:18:50  12   Government has never disputed this.  Mr. Ahn faces

10:18:53  13   danger in Spain because Spain has the diplomatic

10:18:59  14   relations with North Korea.  And the North Koreans, who

10:19:03  15   have a hit out on Mr. Ahn, which, again, the Government

10:19:08  16   has never disputed, would have greater access to him in

10:19:10  17   Spain.

10:19:11  18           So whereas Mr. Ahn might normally just waive

10:19:14  19   extradition and go back to Spain, where he would likely

10:19:17  20   get bail, which, again, the Government has not provided

10:19:19  21   any evidence to dispute the relator's evidence

10:19:23  22   concerning the fact that he would likely get bail in --

10:19:28  23   or would get bail in Spain, so that's sort of a thing to

10:19:33  24   combine, I think, as a special circumstance that he

10:19:37  25   can't just go back to Spain to get bail.

10:19:39  1        And then when you again combine with that

10:19:43  2   the fact that the sentences that he faces in -- on these

10:19:51  3   crimes are not huge -- and I understand that -- you

10:19:56  4   know, I know the law and I know that normally in an

10:19:59  5   extradition proceeding when somebody sits in jail in the

10:20:02  6   United States, and then does ultimately get extradited

10:20:08  7   back, they don't get credit for the time served in the

10:20:11  8   United States, and they have to start all over again.

10:20:14  9        I understand that under the case law that

10:20:15  10  itself is not a special circumstance.  But I think the

10:20:19  11  fact that the terms that he's looking at are not

10:20:22  12  terribly long, and he might wind up serving more time

10:20:25  13  here than he would were he able to just go back to Spain

10:20:31  14  and get bail.  I think that when you look at all of that

10:20:34  15  in combination it is a special circumstance.

10:20:38  16        Now, I still think that Mr. Ahn presents a

10:20:44  17  flight risk.  Whether or not the availability of these

10:20:47  18  third-party custodians is sufficient to mitigate that

10:20:50  19  flight risk is something that I think I would have to

10:20:52  20  explore talking to them in a sealed courtroom.

10:20:57  21        So -- but before we get to that point, is

10:20:59  22  there anything anybody wants to say?

10:21:01  23        MR. LULEJIAN:  A few things, Your Honor, to

10:21:03  24  clarify the record.

10:21:05  25        With respect to the fact that the senior

| | | |
|---|---|---|
| 10:21:09 | 1 | diplomat was at the interviews, the Government noticed |
| 10:21:13 | 2 | that as well.  But I think Your Honor needs to look at |
| 10:21:15 | 3 | the other side of the coin. |
| 10:21:17 | 4 | You've got individuals in a foreign country |
| 10:21:20 | 5 | who have been -- alleged that they have been attacked. |
| 10:21:24 | 6 | And that -- |
| 10:21:24 | 7 | THE COURT:  But where -- but besides their |
| 10:21:25 | 8 | statements, where is the evidence that they were |
| 10:21:26 | 9 | injured, that anybody hit them? |
| 10:21:29 | 10 | MR. LULEJIAN:  You've got the findings -- |
| 10:21:31 | 11 | you've got the findings by the Spanish court, Your |
| 10:21:32 | 12 | Honor.  I think we have to accept that. |
| 10:21:34 | 13 | THE COURT:  Well, no, I don't have to accept |
| 10:21:35 | 14 | that because, as counsel pointed out last time, they |
| 10:21:39 | 15 | have diplomatic relations with Spain, so -- I'm sorry, |
| 10:21:44 | 16 | with North Korea, so they have to accept that.  I don't. |
| 10:21:45 | 17 | Because we don't have diplomatic relations with |
| 10:21:51 | 18 | North Korea. |
| 10:21:51 | 19 | MR. LULEJIAN:  I'm not arguing that you -- |
| | 20 | you -- what I'm arguing, Your Honor, is that the -- you |
| 10:21:53 | 21 | asked -- we don't have -- well, we don't have |
| 10:21:53 | 22 | photographs of the injuries.  We don't have |
| 10:21:55 | 23 | documentation of it. |
| 10:21:56 | 24 | THE COURT:  Yeah, there's no medical |
| 10:21:57 | 25 | reports.  Nothing. |

10:21:58   1          MR. LULEJIAN:  Certainly, we'll ask Spain if
10:22:00   2   they want to supplement it.  It's up to them whether
           3   they want to do that.
10:22:03   4          But the reality is, Your Honor, is put
10:22:04   5   yourself in the shoes -- if you were some -- let's
10:22:05   6   assume that what they're saying is accurate.  Let's
10:22:07   7   assume that you are part of a mission and that you are
10:22:09   8   attacked by somebody in a foreign country where nobody
10:22:14   9   else in the world likes you.
10:22:16  10          They're not going to try -- and who -- so
10:22:17  11   who you going to go to?  You're going to go to a South
10:22:19  12   Korean interpreter to translate for you?
10:22:21  13          You're not going to have somebody do that.
10:22:23  14          You're going to have somebody from your own
10:22:26  15   mission come and translate for you, the senior
10:22:28  16   diplomate.
10:22:28  17          And I understand the optics of this, Your
10:22:30  18   Honor.  But at the same time, from their point of view,
10:22:32  19   I suspect that they feel comfortable with somebody who
10:22:33  20   understands their accent, who's coming from them, who's
10:22:36  21   a representative of their government.
10:22:38  22          I mean, we do this all the time when we go
10:22:39  23   overseas.  We have our own interpreters, rather than
10:22:42  24   relying on the host country or a foreign country.
10:22:45  25          That would be like -- given today's

10:22:46  1   political situation, that would be, for example, of us,

10:22:49  2   if I was arrested say in Iran, having somebody from the

10:22:53  3   Iranian government translate on my behalf.  Absolutely

10:22:56  4   not.  I'm going to want somebody from the U.S.

10:22:58  5   government to translate for me.

10:22:58  6              THE COURT:  If Mr. Ahn didn't speak English,

10:23:01  7   he would be being assisted here not by an -- an

10:23:03  8   interpreter from whatever country he were from, he would

10:23:06  9   be being assisted by a United States interpreter.

10:23:08  10             MR. LULEJIAN:  Presumably that's the case.

10:23:10  11  I don't know how they do it -- I don't know how they do

10:23:11  12  it in Spain, Your Honor.  I just know that that's

10:23:12  13  what -- that's what -- what we've got is what's in the

10:23:14  14  record.

10:23:14  15             THE COURT:  Look, you know, assuming -- and

10:23:16  16  I understand what you're saying.  Assuming that

10:23:19  17  everything that is in the formal request for extradition

10:23:22  18  actually happened, it's a serious -- it's a serious

10:23:24  19  crime and it's a serious event, and I get that.

10:23:26  20             But I'm not to probable cause yet.  I am

10:23:29  21  just considering whether there's a special circumstance.

10:23:33  22  And for the reasons I've stated, I think there is one

10:23:36  23  here.

10:23:37  24             MR. LULEJIAN:  We just ask, Your Honor,

10:23:38  25  given the fact that we've got photographs and the other

10:23:41 1    information that corroborates a lot of what was said by

10:23:45 2    them, including information that was not in the

10:23:46 3    complaint, such as handcuffs and other information and

10:23:49 4    photographs what appear to be inside the embassy,

10:23:52 5    consistent with what these individuals are saying.

10:23:55 6              THE COURT:  There's also -- I mean, I -- you

10:23:57 7    know, there are photographs of those things.  And I

10:23:59 8    think the best, the strongest evidence are the photos

10:24:02 9    from when Mr. Hong and some others went to the stores

10:24:07 10   with the receipts and what they purchased and stuff.

10:24:09 11             There are some inconsistencies.

10:24:12 12             Like I noticed something about how at one

10:24:14 13   point the formal request says they -- that people, the

10:24:18 14   victim exited still tied up.  But then a lot of the

10:24:23 15   witness statements say I took off his ties before -- you

10:24:28 16   know, I found him in the basement or whatever and took

10:24:30 17   off his ties and then we exited.

10:24:32 18             So -- and moreover, you know, there was a

10:24:35 19   certain amount of time when the North Koreans were left

10:24:39 20   in the -- in the embassy by themselves and, you know --

10:24:44 21   I'm not determining probable cause yet.

10:24:46 22             MR. LULEJIAN:  Your Honor, I don't want to

10:24:47 23   go down this rabbit hole.

         24             THE COURT:  Yes.

10:24:49 25             MR. LULEJIAN:  I do want to point out there

10:24:51  1   is another side to the -- to the coin.  And there is
10:24:53  2   a -- there may be a very valid reason for the fact that
10:24:55  3   the North Koreans had one of their own diplomates
10:24:59  4   translate on their behalf, and the Court accepted that.
10:25:01  5        THE COURT:  Well, it's not just one of
10:25:02  6   theirs.  It's the commercial attache who, you know, is
10:25:05  7   in charge of the whole thing.
10:25:06  8        MR. LULEJIAN:  I think it's -- you know,
10:25:07  9   without knowing any details, Your Honor, I think there's
10:25:09  10  a big difference from somebody who's a member of the
10:25:12  11  ruling regime and somebody who is a diplomate in a -- in
10:25:16  12  a country, a single country in Western Europe in a
10:25:19  13  single embassy.
10:25:23  14       THE COURT:  Well, I would note too that, you
10:25:26  15  know, they -- there are indications in the formal
10:25:27  16  request that they -- that when the -- Mr. Ahn,
10:25:30  17  allegedly, and the people who went into the embassy with
10:25:33  18  him were speaking in Korean, that the North Koreans
10:25:42  19  understood what they were saying.  They simply thought
10:25:45  20  that they had an accent.  And so somebody else could
10:25:47  21  have served as an interpreter.
10:25:49  22       You know, look, again, I understand your
10:25:50  23  point and I see it.  I accept it.  But it does not, to
10:25:53  24  me, undermine the fact that all of this together is a
10:25:57  25  special circumstance.

10:25:58   1          MR. LULEJIAN:  Yes, Your Honor, I'm not

10:25:59   2   quibbling about that.  I just want to -- I just want to

10:26:03   3   clarify this.

           4          THE COURT:  All right.

10:26:03   5          MR. LULEJIAN:  So the Court, you know,

10:26:04   6   having the Court making -- make this finding, I think

10:26:05   7   the next step is -- that Your Honor about to go to is

10:26:08   8   the question of whether or not he is a flight risk.

10:26:09   9          And we'll save our arguments for that.

10:26:11   10          THE COURT:  All right.  So does anybody for

10:26:13   11   the relator want to say anything before I seal the

10:26:17   12   courtroom?

10:26:17   13          MS. RIM:  No, Your Honor.  Thank you.

10:26:19   14          THE COURT:  All right.  So I need to have

10:26:21   15   everyone leave who is -- well, you tell me if this is

10:26:24   16   what I would do.  I would need to have everyone leave

10:26:27   17   who is not either a direct family member, an employee of

10:26:33   18   the court, you know, i.e. my staff sitting over there,

10:26:36   19   or a proposed custodian.

10:26:40   20          MS. RIM:  Yes, Your Honor.

10:26:41   21          THE COURT:  And I suppose also the

10:26:42   22   proposed -- any proposed surety should remain as well.

10:26:45   23          MS. RIM:  We would have no objection to

10:26:47   24   that.

10:26:47   25          THE COURT:  Is that -- Mr. Lulejian, is

10:26:48  1  that --

10:26:49  2            MR. LULEJIAN:  If Your Honor was going to

10:26:51  3  close the courtroom, that is correct.

10:26:52  4            THE COURT:  And I am going to close it for

10:26:55  5  as little as I need to.  So we may come back into open

10:26:59  6  court.  I don't know.  It depends on what happens.

10:27:01  7            MR. LULEJIAN:  Again, I would just repeat

10:27:02  8  the United States' objection, Your Honor.

10:27:04  9            THE COURT:  All right.  And I will make a

10:27:05  10  finding that -- and I agree with the Government that --

10:27:06  11  and I think I have conducted myself, recognizing this

10:27:12  12  throughout this case that, you know, I have a strong

10:27:15  13  preference and the law has a strong preference for an

10:27:21  14  open courtroom.  But -- and there is generally a

10:27:22  15  right-of-access here.  But I think that the case law is

10:27:25  16  such that when, again, the Government has confirmed

10:27:30  17  these deaths threats against Mr. Ahn, and I think it's

10:27:36  18  perfectly reasonable that therefore anybody who took

10:27:40  19  custody of Mr. Ahn might be in danger.  And I need to

10:27:44  20  speak to them about that in private, because there's no

10:27:48  21  purpose when their lives are in danger in making that

10:27:53  22  information known concerning their identity.

10:27:56  23            So I just want to make the -- if there's any

10:27:59  24  other finding that anybody thinks I have to make, I will

10:28:02  25  make it.  But --

|          |    |                                                             |
|----------|----|-------------------------------------------------------------|
| 10:28:03 | 1  | MS. RIM:  No, Your Honor.                                    |
| 10:28:04 | 2  | May I propose a ten-minute recess, and                      |
| 10:28:07 | 3  | then we can --                                               |
| 10:28:08 | 4  | THE COURT:  I think that's a good idea.                      |
| 10:28:11 | 5  | All right.  So it's 10:25, so why don't we                   |
| 10:28:14 | 6  | meet back here -- it's little past that.  So we'll say       |
| 10:28:20 | 7  | at 20 of 11.  All right.  Thank you.                         |
|          | 8  | THE CLERK:  This Court is now in recess.                     |
| 10:47:24 | 9  | (RECESS TAKEN)                                               |
| 10:47:24 | 10 | THE CLERK:  Please remain seated.  This                      |
| 10:47:33 | 11 | Court is once again in session.  The Honorable Jean P.       |
|          | 12 | Rosenbluth, United States Magistrate Judge presiding.       |
| 10:47:41 | 13 | Recalling case No. CV 19-5397-JFW-JPR:                       |
| 10:47:42 | 14 | United States of America versus Christopher Philip Ahn.      |
| 10:47:47 | 15 | THE COURT:  All right.  So let me ask                        |
| 10:47:49 | 16 | counsel for the relator, is there anybody in this           |
| 10:47:52 | 17 | courtroom who you don't think should be or you have a        |
| 10:47:55 | 18 | question about or --                                         |
| 10:47:58 | 19 | MS. RIM:  I just -- Your Honor, I assume                     |
| 10:48:00 | 20 | that --                                                      |
| 10:48:00 | 21 | THE COURT:  So we have --                                    |
| 10:48:02 | 22 | MS. RIM:  -- this is court staff.                            |
| 10:48:04 | 23 | THE COURT:  I recognize two of those four                    |
| 10:48:05 | 24 | people.  So I recognize the two on the right.  And on        |
| 10:48:09 | 25 | the left I believe one is a brand new employee.  I'm not     |

| | | |
|---|---|---|
| 10:48:13 | 1 | sure who.  Who's sitting next to Ms. Kerbeck? |
| 10:48:17 | 2 | MS. KERBECK:  Your Honor, Amy Kerbeck of |
| 10:48:19 | 3 | pretrial services.  This is actually the pretrial |
| 10:48:22 | 4 | services officer assistant who conducted the original |
| 10:48:25 | 5 | report. |
| 10:48:27 | 6 | THE COURT:  All right.  Thank you. |
| 10:48:28 | 7 | And then behind her we have Mr. Roper, who |
| 10:48:31 | 8 | is one of the people in charge of the Clerk's Office for |
| 10:48:32 | 9 | the magistrate judges, and a trainee next to him, I |
| 10:48:37 | 10 | believe. |
| 10:48:37 | 11 | MS. RIM:  Your Honor, we have no objection |
| 10:48:38 | 12 | to anyone present in the courtroom. |
| 10:48:41 | 13 | THE COURT:  Thank you. |
| 10:48:41 | 14 | All right.  So -- |
| 10:48:45 | 15 | MR. LULEJIAN:  Your Honor, perhaps we should |
| 10:48:47 | 16 | put on the record who is here from the relator's side. |
| 10:48:50 | 17 | THE COURT:  If you would like, that's time. |
| 10:48:51 | 18 | So -- |
| 10:48:51 | 19 | MR. LULEJIAN:  I think we should put that on |
| 10:48:53 | 20 | the record, Your Honor. |
| 10:48:55 | 21 | THE COURT:  All right.  Then can you -- |
| 10:48:57 | 22 | well, these proceedings are sealed as of now.  So I |
| | 23 | don't see any problem with that. |
| | 24 | |
| 10:49:01 | 25 | (PROCEEDINGS UNDER SEAL.) |

10:49:01   1

2

11:32:52   3                    (PROCEEDNGS IN OPEN COURT.)

11:33:26   4

11:33:27   5                    THE COURT:  All right.  So we're back on the

11:33:28   6    record.  As I indicated a moment ago, I'm going to take

11:33:32   7    the matter of Mr. Ahn's bail application under

11:33:36   8    submission.  And so we have a few housekeeping things we

11:33:39   9    were going to address now.

11:33:41   10                   So, Mr. Lulejian.

11:33:43   11                   MR. LULEJIAN:  First thing, Your Honor, as

11:33:45   12   Your Honor knows, on June the 20th we filed a formal

11:33:49   13   request for extradition from Spain.

11:33:50   14                   At the Court's request, on the 25th I

11:33:52   15   believe we filed -- we lodged with the Court a redacted

11:33:55   16   copy of those documents.  We tried to limit the

11:33:59   17   redactions to personal information about the victims in

11:34:01   18   this case and then personal information about Mr. Ahn as

11:34:04   19   well.

11:34:05   20                   THE COURT:  I apologize.  Because the

11:34:06   21   Clerk's Office inadvertently then resealed the whole

11:34:11   22   case again, so I think I noticed it at the same time you

11:34:13   23   contacted Ms. Martinez, and I believe we've gotten that

11:34:16   24   fixed.  So the only thing that should be sealed on the

11:34:19   25   docket, in my view, is the unredacted formal request for

11:34:23  1   extradition.

11:34:23  2   MR. LULEJIAN:  And I'm sorry that the second

11:34:25  3   copy that we always file, even though it says that we

11:34:26  4   send a courtesy copy to the Court, led to the confusion

11:34:30  5   in this case.  Nonetheless, with the Court's permission,

11:34:32  6   the Government would like to file on CMECF a copy of the

11:34:35  7   redacted request for extradition.

11:34:38  8   I will make a couple of tweaks to the cover

11:34:40  9   page just to -- just to say it's no longer proposed.

11:34:42  10  But I would like to get that on file today.

11:34:44  11  THE COURT:  Do you have any objection?

11:34:45  12  MS. RIM:  No, Your Honor.

11:34:46  13  THE COURT:  All right.  That will go in.  I

11:34:48  14  hope you do it today.

11:34:49  15  MR. LULEJIAN:  And with respect to the

11:34:51  16  extradition date, I have contacted counsel, and we will

11:34:54  17  certainly talk with each other to try to put together

11:34:58  18  a -- find a date that works for the Court for an

11:35:01  19  extradition hearing and a briefing schedule.

11:35:03  20  If we can get that done before July 11th so

11:35:06  21  there's no need for the status conference, we can

11:35:08  22  certainly do that.  If not, we'll certainly let the

11:35:09  23  Court know prior to that that this is the issue that's

11:35:12  24  come up.

11:35:13  25  THE COURT:  All right.  And I can't remember

| | | |
|---|---|---|
| 11:35:14 | 1 | if I said this before.  But I share this courtroom, and |
| 11:35:16 | 2 | so Thursdays and Fridays are better for me to have |
| 11:35:19 | 3 | hearings.  It's not to say that I can't have a hearing |
| 11:35:21 | 4 | on another day, but it just is less administrative work |
| 11:35:23 | 5 | if it's a Thursday or Friday. |
| 11:35:26 | 6 | MR. LULEJIAN:  That's fine, Your Honor. |
| | 7 | THE COURT:  All right. |
| 11:35:27 | 8 | MR. LULEJIAN:  I believe those were the only |
| 11:35:31 | 9 | housekeeping things left, Your Honor. |
| 11:35:33 | 10 | THE COURT:  Did you have anything, Ms. Rim |
| 11:35:35 | 11 | or Mr. Lee? |
| 11:35:36 | 12 | MS. RIM:  Your Honor, I just -- is the Court |
| 11:35:37 | 13 | going to order us back on a certain date?  Or -- |
| 11:35:40 | 14 | THE COURT:  Well, I think what I will -- |
| 11:35:40 | 15 | it's all going to -- I need to think about this and I |
| 11:35:44 | 16 | want to make sure I'm getting it right.  And so to the |
| 11:35:47 | 17 | extent I decide to deny bail, I don't think I need |
| 11:35:51 | 18 | anybody back, and I would simply issue some kind of |
| 11:35:53 | 19 | order. |
| 11:35:55 | 20 | To the extent I decided to grant bail, I |
| 11:35:58 | 21 | would have Ms. Martinez contact counsel to determine |
| 11:36:02 | 22 | what's a good date for the proposed sureties and |
| 11:36:06 | 23 | everyone else to come back who needs to be back. |
| 11:36:09 | 24 | MS. RIM:  Yes, Your Honor.  Thank you. |
| 11:36:10 | 25 | THE COURT:  All right.  Anything else? |

| | | |
|---|---|---|
| 11:36:11 | 1 | MR. LULEJIAN:  Nothing further from the |
| 11:36:13 | 2 | United States, Your Honor. |
| 11:36:13 | 3 | MS. RIM:  No.  Thank you. |
| 11:36:15 | 4 | THE COURT:  Okay. |
| 11:36:15 | 5 | MR. LULEJIAN:  Thank you very much, Your |
| 11:36:16 | 6 | Honor. |
| 11:36:16 | 7 | (PROCEEDINGS CONCLUDED.) |
| | 8 | |
| | 9 | |
| | 10 | |
| | 11 | |
| | 12 | |
| | 13 | |
| | 14 | |
| | 15 | |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

1

2

3                    *CERTIFICATE OF OFFICIAL REPORTER*

4

5    COUNTY OF LOS              )
     ANGELES                    )
6                               )
     STATE OF
7    CALIFORNIA

8    I, SHERI S. KLEEGER, FEDERAL OFFICIAL COURT REPORTER, in

9    and for the United States District Court for the Central

10   District of California, do hereby certify that pursuant

11   to Section 753, Title 28, United States Code that the

12   foregoing is a true and correct transcript of the

13   stenographically reported proceedings held in the

14   above-entitled matter and that the transcript page

15   format is in conformance with the regulations of the

16   Judicial Conference of the United States.

17

18   *Date:  July 10, 2019*

19

20

21

22            */S/ SHERI S. KLEEGER*

23            *Sheri S. Kleeger, CSR No. 10340*

24            *Federal Official Court Reporter*

25