NICOLA T. HANNA
United States Attorney
PATRICK R. FITZGERALD
Assistant United States Attorney
Chief, National Security Division
JOHN J. LULEJIAN (Cal. Bar No. 186783)
Assistant United States Attorney
        1200 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-0721
        Facsimile: (213) 894-0141
        E-mail:     John.Lulejian@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

              FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF<br><br>CHRISTOHER PHILIP AHN,<br><br>A Fugitive from the Government of Kingdom of Spain. | No. 2:19-MJ-01523<br><br>UNITED STATES' OPPOSITION TO FUGITIVE'S APPLICATION FOR REVIEW/RECONSIDERATION OF ORDER SETTING CONDITIONS OF RELEASE/ DETENTION (18 U.S.C. § 3142) AND REQUEST FOR HEARING; MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Date:       October 22, 2019<br>Time:       10:30 a.m.<br>Location:   Courtroom of the<br>            Hon. Jean Rosenbluth |

      Plaintiff, United States of America, by and through its counsel

of record, the United States Attorney, hereby submits its Opposition

to fugitive CHRISTOPHER PHILIP AHN's ("AHN") Application for

Review/Reconsideration of Order Setting Conditions of

Release/Detention (18 U.S.C. § 3142) and Request for Hearing

(Dkt. 123).  This opposition is based on the attached Memorandum of

Points and Authorities, the records and files of this case, as well

1  as any arguments made by the United States at the upcoming hearing on
2  this matter.

3      For the reasons set forth in detail below, the United States
4  respectfully requests the Court deny AHN's application and not modify
5  the conditions of release.

6  Dated: October 15, 2019          Respectfully submitted,

7                                   NICOLA T. HANNA
                                    United States Attorney
8
                                    PATRICK R. FITZGERALD
9                                   Assistant United States Attorney
                                    Chief, National Security Division
10

11                                  */s/ John J. Lulejian*
                                    JOHN J. LULEJIAN
12                                  Assistant United States Attorney

13                                  Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Since the United States Marshals Service first arrested CHRISTOPHER PHILIP AHN ("AHN") for his role in the February 22, 2019, attack of the Embassy of the Democratic People's Republic of Korea ("North Korea") in Madrid, Spain, the United States has maintained that he should be detained pending extradition.  (Dkt. 12.)  On April 23, 2019, after a contested hearing, the Court granted the United States request for detention and ordered AHN detained pending extradition.  (Dkt. 11.)  On June 18, 2019, the Court again considered whether to grant AHN bail.  (Dkt. 38.)  After carefully evaluating the facts, the Court determined that AHN "was a flight risk despite the nearly $1 million in property being offered to secure his release."  (Id. at 1.)  The Court also noted that given AHN's concerns about his personal safety, his "incentive to flee, with or without his family, [was] very high."  (Id. at 2.)  Thus, the Court denied AHN's request for bail.  (Id. at 1.)

On June 28, 2019, the Court, held another hearing to consider AHN's renewed request for release pending extradition.  (Dkt. 56.)  At that hearing, AHN, acting on the invitation of the Court, urged the Court to release him to the custody of third-party custodians.  (Id.)  Before taking AHN's request under advisement, the Court met with a number of individuals and discussed their obligations as possible third-party custodians.  (Id.)  All of these individuals expressed a willingness to serve in that role to support AHN and secure his release.

On July 2, 2019, the Court, over the objections of the United States, determined that limited circumstances existed under

1  which AHN could be released on bond.  (Dkt. 58.)  The Court, itself
2  deeply concerned about the risk of flight, reiterated that standing
3  alone, the posting of property was not sufficient to assure that AHN
4  would not flee:

5       The posting of property, even the $1 million originally
6       offered, would not sufficiently mitigate the risk of flight
7       because, as the Court pointed out at the June 18 hearing,
8       the family members who would lose their homes should [AHN]
9       flee would surely value his life more than a million
10      dollars.

11  (Id. at 6.)  The Court reasoned that the addition of third-party
12  custodians might address flight risk:

13      [W]ith the added security of an array of third-party
14      custodians who risk not just monetary loss but criminal
15      prosecution should he flee or otherwise violate the
16      conditions of his release, his appearance as required
17      [could] be reasonably assured.

18  (Id.)

19      On July 9, 2019, the Court held another hearing, where it set
20  bail and released AHN on bond, subject a number of conditions
21  including house arrest.  (Dkt. 73.)  In addition, the Court imposed a
22  number of responsibilities on the third-party custodians, including
23  regular visits with AHN at his residence to ensure that he did not
24  flee and that he abided by the terms of his bond.  (Id.)  On
25  July 17, 2019, the Court modified the bond to reduce the amount of
26  property that would be posted.  (Dkt. 93.)

27      On October 7, 2019, AHN filed the instant application, in which
28  he asked the Court "to lift his house arrest and instead impose a

curfew that requires that he return to his residence by 9:00 P.M. each day." (Dkt. 123 at 1.) He also asked that the Court "modify the duties of the third-party custodians (detailed during under-seal proceedings) to remove any requirement that such custodians visit Relator personally at his residence." (Id.)

As detailed below, AHN offers no basis for the Court to reconsider its decision. The circumstances have not changed substantially to warrant relaxing the bond conditions. In addition, the changes AHN requests appear to be for convenience, rather than for reasons related to the bond, such as his inability to comply with a condition or a third-party custodians' inability to fulfill his or her responsibilities. Further, ramifications to the United States are great if AHN were to take advantage of the relaxed conditions and flee. Accordingly, the United States respectfully requests that the Court deny AHN's application.

## II.   ARGUMENT

There is no reason for the Court to reconsider its prior ruling and relax the conditions of bond, as urged by AHN. Given its concerns about the risk of flight, the Court struggled to fashion a decision that would allow AHN to be on bond pending extradition. Before arriving at its decision, the Court held multiple hearings, reviewed extensive briefing by the parties, and interviewed a number of individuals who were willing to serve as third-party custodians and/or sureties. Only when it was satisfied that it could mitigate the risk of flight, did the Court release AHN, and in doing so, craft strict bond conditions to achieve that end. (Dkt. 73.)

By asserting that the agree-upon bond conditions must be changed, AHN suggests that the Court's carefully crafted decision

requires revision.  Yet, AHN provides no new facts that demonstrate that the circumstances have changed substantially to mitigate his risk of flight since the Court first placed him on bond.[1]  In fact, the opposite is true.

Spain continues to press for AHN's extradition.  The United States recently filed additional information that Spain provided to support the extradition request, including photographs of AHN and his co-conspirators entering the embassy and the attackers running on the embassy grounds, as well as statements from eyewitnesses and Spanish police officers corroborating the victims' accounts of what occurred during the violent attack.  (Dkt. 118.)  As the case against AHN strengthens and the likelihood that he will be extradited to Spain to stand trial for attacking the North Korean embassy increases, so does his incentive to flee.

Although the United States continues to object to AHN's release on bond, it recognizes that his ability to flee is limited to some degree because of the strict conditions in the bond.  This bond restricts AHN to residence.  (Dkt. 73 at 3.)  He also must participate in the Court's Location Monitoring Program and cannot leave his residence without approval from Pretrial Services.  (Id. at 3-4.)  AHN is prohibited from contacting his co-conspirators and organizations whose sympathies extend to helping ADRIAN HONG CHANG continue to evade justice.  (Id. at 4.)  Further, in addition to supervision by the United States Pretrial Services Office and the United States Marshals Service, AHN is subject to search conditions.

---

[1] Cf. United States v. Falcetti, No. 02 CR 140 (ILG), 2002 WL 31921179, at *1 (E.D.N.Y. Oct. 31, 2002) ("Conditions of bail should properly be modified if a substantial change in circumstances as they existed at the time bail was fixed is clearly shown.").

1   (Id. at 3.)  Removing the house arrest component of his bond and
2   instead imposing a curfew, as AHN urges, weakens the Court's ability
3   to mitigate the risk of flight.  If AHN is subject to a curfew, it
4   means that there will be significant portions of the day where AHN's
5   actions and compliance with the bond conditions cannot be monitored.
6   This unsupervised time may allow AHN to make the preparations and
7   take the steps necessary to flee when the opportunity presents
8   itself.

9       The requirement that AHN meet with the third-party custodians at
10  his residence also mitigates the risk of flight.  If, however, AHN
11  could meet with the third-party custodians electronically, the
12  custodians could not verify that AHN had not fled or violated the
13  conditions of this bond.  This not only defeats the Court's intent in
14  trying to limit AHN's ability to flee, but it also subjects the
15  third-party custodians to liability if he does so.  Thus, the third-
16  party custodians meeting AHN at his residence are necessary to ensure
17  compliance with the bond and to mitigate the risk of flight.

18      Further, it is important to recognize that AHN, seizing on the
19  Court's invitation, agreed to be "supervised" by third-party
20  custodians.  AHN's willingness for the use of third-party custodians
21  prompted the Court to advise each individual of the responsibilities,
22  liabilities, and hardships he or she would take on if he or she
23  agreed to serve as a third-party custodian.  In fact, when some
24  third-party custodians expressed concerns about their abilities to
25  comply with specific requirements, the Court attempted to adjust the
26  requirements to accommodate those individuals.  Thus, there is no
27  question that AHN and the third-party custodians understood what the
28  Court expected them to do, to guarantee AHN's release from custody.

1    AHN offers no explanation why the bond conditions must be
2    changed at this time.  He does not state why he cannot abide by house
3    arrest as ordered by the Court.  Nor does AHN state why the third-
4    party custodians cannot visit him at his residence, as they promised
5    the Court as a condition of his release.  Thus, it appears that AHN
6    seeks to change the bond conditions for convenience, rather than for
7    reasons related to his inability to comply with the bond or the
8    third-party custodians' inability to fulfill their responsibilities.

9    Finally, the extradition hearing in this case is less than three
10   months away.  Following the hearing, AHN either will be remanded into
11   the custody of the Marshals, if he is found extraditable, or released
12   without conditions, if he is not found extraditable.  If AHN were to
13   flee during this short interim period, there would be serious
14   consequences for the United States.  As the Supreme Court stated in
15   Wright v. Henkel, when a foreign government makes a proper request
16   pursuant to a valid extradition treaty, the United States must
17   deliver the person sought after he or she is apprehended:

18        The demanding government, when it has done all that the
19        treaty and the law require it to do, is entitled to the
20        delivery of the accused on the issue of the proper warrant,
21        and the other government is under obligation to make the
22        surrender; an obligation which it might be impossible to
23        fulfill if release on bail were permitted.  The enforcement
24        of the bond, if forfeited, would hardly meet the
25        international demand; and the regaining of the custody of
26        the accused obviously would be surrounded with serious
27        embarrassment.
28

190 U.S. 40, 62 (1903); accord Jimenez v. Aristiguieta, 314 F.2d 649, 653 (5th Cir. 1963) ("No amount of money could answer the damage that would be sustained by the United States were the appellant to be released on bond, flee the jurisdiction, and be unavailable for surrender, if so determined.  The obligation of this country under its [extradition] treaty with [the foreign country] is of paramount importance."); United States ex rel. McNamara v. Henkel, 46 F.2d 84, 84-85 (S.D.N.Y. 1912) (presentation of forfeited bail to foreign nation "is ridiculous, if not insulting").

The incentive for AHN to flee has not dissipated and relaxing the bond conditions could provide him with additional opportunities to flee.  Should AHN be allowed to take advantage of those opportunities and flee, his actions would have serious consequences for the United States, as well as other international ramifications.

**III. CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court deny AHN's application.