1          UNITED STATES DISTRICT COURT

2     CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3          HONORABLE JEAN P. ROSENBLUTH

4       UNITED STATES MAGISTRATE JUDGE PRESIDING

5                    - - -

6
United States of America,        )
7                    PLAINTIFF,   )
                                  )
8  VS.                            )   NO. CV 19-5397 FLA
                                  )
9  Christopher P. Ahn,            )
                    DEFENDANT,    )
10 _____)

11

12

13      REPORTER'S TRANSCRIPT OF PROCEEDINGS

14           LOS ANGELES, CALIFORNIA

15         FRIDAY, SEPTEMBER 23, 2022

16

17

18      _____

19          KATIE E. THIBODEAUX, CSR 9858
            U.S. Official Court Reporter
20               Suite 4311
             350 West 1st Street
21          Los Angeles, CA  90012

22

23

24

25

KATIE THIBODEAUX, CSR, RPR, CRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1    APPEARANCES OF COUNSEL:

 2


 3    ON BEHALF OF THE PLAINTIFF, UNITED STATES OF AMERICA:

 4                        U.S. DEPARTMENT OF JUSTICE
                          U.S. ATTORNEY'S OFFICE
 5                        BY:  JOHN LULEJIAN, AUSA
                          312 North Spring Street
 6                        Twelfth Floor
                          Los Angeles, CA  90012
 7


 8


 9    ON BEHALF OF THE DEFENDANT:

10                        BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
                          DROOKS, LINCENBERG & RHOW PC
11                        BY:  CHRISPHER J. LEE
                          1875 Century Park East
12                        Twenty-Third Floor
                          Los Angeles, CA  90067
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1          LOS ANGELES, CALIFORNIA; FRIDAY, SEPTEMBER 23, 2022

 2                              1:33 P.M.

 3                             - - - - -

 4

 5

 6          THE CLERK:  Calling Case No. CV 19-5397-JWF-, USA

 7   versus Christopher Phillip Ahn.

 8          MR. LULEJIAN:  Good afternoon, your Honor.  John

 9   Lulejian on behalf of the United States of America.

10          THE COURT:  All right.  Hello.

11          MR. LEE:  Good afternoon, your Honor.  Christopher

12   Jumin Lee on behalf of Mr. Ahn, and I would like to pass

13   on the apologies of my co-counsel, Ms. Rim.  She has been

14   called in with a medical emergency today so she intended

15   to make it but she was not able to and we apologize for

16   that, your Honor.

17          THE COURT:  Well, I'm sorry to hear that.  I hope

18   she is all right.

19              So we are here on Mr. Ahn's request to modify

20   numerous conditions of his release.  This was originally

21   filed before Judge Aenlle-Rocha, and he referred it to

22   me.  And I'm sorry, I forgot.  We do have an interpreter

23   who is I believe interpreting for Mr. Ahn's mother or is

24   it grandmother?

25          MR. LEE:  That's correct, Your Honor.
```

```
 1          THE COURT:  For both of them or for just the
 2   mother?
 3          MR. LEE:  His grandmother.
 4          THE COURT:  Could we have an appearance from the
 5   interpreter, please.
 6          RIGHT2:  Yes, Your Honor.  This is Korean language
 7   interpreter, Mary Ann Yi.
 8          THE COURT:  All right.  Thank you.
 9            So the district judge referred it to me.  I
10   want to apologize to everyone for the docketing mistake.
11   Ms. Martinez was not here that week, and I told the
12   relief to grant the sealing order, not the application as
13   a whole which I wouldn't do without a hearing.  And so
14   I'm sorry for any consternation that that caused when I
15   think there was a weekend when it showed that the
16   application itself had been granted in full.
17            All right.  So there have to be some changed
18   circumstances to warrant a modification of the bond.
19   There are changed circumstances here as both sides have
20   pointed out the ones that favor them.
21            Certainly for Mr. Ahn, there is the fact that
22   I found that two of the most serious allegations against
23   him that there was no probable cause to support them and
24   therefore he could not be extradited on those two counts.
25   And that has significantly reduced the maximum possible
```

1    sentence that he will be subject to if he is returned to

2    Spain.

3            On the government's side, there is the fact

4    that I did find that there was probable cause as to four

5    of the allegations and therefore that he could, against

6    my wishes, be certified to be extradited on those four

7    counts.

8            So there are changed circumstances here.  I

9    can reconsider the bond.  I personally have very little

10   concern that Mr. Ahn going to flee and certainly not now

11   that he has got a long road ahead of him with the

12   district judge and then depending on what happens with

13   the Ninth Circuit and who knows even beyond that.  So I

14   think that the notion that he would flee any time soon,

15   the possibility of that is very remote.

16           On the other hand, don't tell my husband, but

17   I have been known to be wrong, and I recognize that, as

18   the government argues, the consequences if Mr. Ahn were

19   to flee are very grave here.  So I want to strike a

20   balance to try to ensure that the most -- what is the

21   right words.  The strongest deterrents to fleeing are in

22   place, and then I think that some of the other conditions

23   that don't really have so much to do with that can be

24   modified.

25           So I am inclined, although I will certainly

1    hear from counsel, to leave in place the GPS location

2    monitoring because I know it can't be pleasant to wear

3    that thing around your ankle, but I think -- and I am

4    happy to hear from pretrial if they are here -- I believe

5    that is the only sort of location monitoring that would

6    provide an immediate notification that the person has

7    absconded.

8            I am also not inclined to remove the curfew

9    although I think 8:00 a.m. is probably a little late, and

10   we could make it midnight to 7:00 a.m. or something.  All

11   the other stuff that Mr. Ahn asks for seems to me to some

12   degree or another to be reasonable.

13           So, for instance, I don't see any need to have

14   the third party custodians that don't live with him do a

15   video chat with him every day.  I would -- you know, I do

16   still think because they don't live with him that it

17   is -- and that they are custodians of him, that it would

18   be helpful if each of them, you know, perhaps once a week

19   checked in with him by video on a different day.  So that

20   is my thinking there.

21           Mr. Ahn wants to travel.  You know, I don't

22   see a big difference between 50 miles and the Central

23   District of California.  So I would be inclined to say

24   that his travel could be expanded to the Central District

25   of California.  As for traveling outside the -- I'm

1  sorry -- outside the district in the United States, I

2  don't know.  I think I need to hear some argument about

3  that.  I would also like to hear from pretrial as to how

4  the location monitoring bracelet works outside the

5  district if at all.

6          I don't see any reason to prevent contact with

7  LINK.  He has represented that he doesn't have any intent

8  to contact them or to have discussions with them.

9  Mr. Hong Chang apparently has not had anything to do with

10 him for ten years.  I just don't see why that condition

11 has to remain.

12         I don't agree with the argument about Free

13 Joseon, however, because although I did find that under

14 the Spanish definition of a criminal organization, Free

15 Joseon was not a criminal organization because there was

16 no evidence that -- I'm sorry to the court reporter if I

17 am speaking too quickly.  There was no evidence that the

18 government had presented that Free Joseon had ever been

19 involved in any other criminal activity which the Spanish

20 statute required.

21         But Mr. Ahn's counsel themselves have stated

22 that Free Joseon committed these alleged crimes, and,

23 therefore, I do think that forbidding contact with Free

24 Joseon and -- I don't how to pronounce it but --

25 Cheollima Civil Defense, the predecessor organization,

1   that is appropriate.

2           I don't really know what Pegasus Strategies

3   is.  I think it is some sort of consulting enterprise

4   that Mr. Hong Chang started a long time ago.  I need to

5   know more about that.

6           So I think that is everything.  Those are my

7   initial thoughts.  I don't know if counsel would prefer

8   to address things one at a time or to talk about

9   everything all at once, but I am happy do it however

10  counsel want to speak.

11      MR. LEE:  I think it is probably easier to go one

12  at a time.

13      THE COURT:  To what?  To go by the conditions one

14  at a time, your Honor.  Okay.  So why don't we start

15  since I think they are the easiest with the conditions

16  concerning LINK and Free Joseon.  It is your motion,

17  Mr. Lee, so did you have anything you wanted to say

18  related to my preliminary thoughts?

19      MR. LEE:  Just briefly, Your Honor.  Obviously, if

20  you are inclined to keep the restriction in place with

21  regard to Free Joseon, I don't think we are opposed to

22  that, but we would very much like the restriction with

23  LINK to be removed.  LINK is essentially a student

24  volunteer organization that is very prevalent in the

25  Korean-American community.  So in order for Mr. Ahn to

1  avoid associating with anyone related to LINK, he really

2  has to avoid participating in the Korean-American

3  community in general.  And that has been an incredibly

4  large burden to him over the years, and it has also not

5  been fair on LINK I think because they have been kind of

6  brought into this.

7         Their name was been associated with

8  allegations that have frankly nothing do with them.  So

9  from that perspective as well, we think it is appropriate

10  that the restriction on communication with them be

11  removed.

12         THE COURT:  Can you explain to me a little bit

13  more about what Pegasus Strategies is?

14         MR. LEE:  Yes, Your Honor.  We understand that

15  Pegasus Strategies is as you say a consulting company

16  that was started by Mr. Hong Chang.  We understand that

17  they dealt with North Korea related issues, but we are

18  not entirely certain what exactly they did or how much

19  overlap they had with Free Joseon.

20         I imagine the government included it in the

21  initial order out of an abundance of caution, Your Honor,

22  but, from our perspective, we don't think they are

23  directly -- frankly, we are not even certain that they

24  are still a going concern.

25         THE COURT:  So I gather from that you don't care

1    that much one way or the other about Pegasus Strategies?

2         MR. LEE:  I think that is accurate, Your Honor.

3         THE COURT:  All right.  Mr. Lulejian, did you have

4    anything you wanted to say?

5         MR. LULEJIAN:  Say a few things, Your Honor.

6              Adrian Hong Chang has been a fugitive for

7    three years.  The government will track him down.  We

8    will bring him in.  The problem is every one of these

9    organizations has got ties to him including LINK.  LINK

10   is being portrayed as a college organization.  It is

11   actually a very sophisticated 501.3 corporation.  I went

12   ahead and pulled the board of directors today which

13   includes two members of international law firms, a number

14   of company leaders.  This isn't a college group.  While

15   they have college campuses out there, this is a group

16   that is out there.

17        THE COURT:  But I don't care what they are if they

18   don't have any current affiliation with Mr. Hong Chang.

19        MR. LULEJIAN:  I read what their president said,

20   Your Honor.  He said he is no longer part of our

21   organization since 2008.  But what concerns me, Your

22   Honor, is that Adrian Hong Chang was one of the founders

23   of this organization -- this concerns the government --

24   has got contacts within these groups.  And what we are

25   trying to do is to prevent Mr. Ahn from having indirect

1  contact with Adrian Hong Chang in this network that is

2  out there that it is demonstrated that they can take

3  people out.

4         Your Honor described Free Joseon as an

5  underground railroad.  And our concern is that if we

6  remove these conditions and allow them to have free

7  access, Mr. Hong Chang and his confederates now have a

8  way to get to Mr. Ahn should they decide they want to.

9      THE COURT:  But there must be a million people

10 that Mr. Ahn -- well, not a million.  I am prone to

11 hyperbole, but there must be a lot of people that both

12 Mr. Ahn and Mr. Hong Chang know that he could if he

13 wanted to indirectly use to get in touch with Mr. Hong

14 Chang whether or not they are related to LINK.

15     MR. LULEJIAN:  I mean, Your Honor, we are trying

16 to be cautious.  We are trying to shut down every avenue

17 that we can.

18     THE COURT:  Well, if you get me some actual

19 evidence that somebody in LINK is helping Mr. Hong Chang

20 or conspiring with Mr. Ahn to help him flee, fine.  But I

21 am not -- it is a reputable organization, and I just

22 don't see a basis for saying that he can't have any

23 contact with them.  He has represented he doesn't really

24 intend to but I -- this just all seems like speculation.

25     MR. LULEJIAN:  I understand where the Court is

```
 1    coming from, Your Honor.  We are just trying to cover our

 2    bases, but, at the same time, Your Honor, I think we do

 3    have a great deal of concern about ways for Mr. Hong

 4    Chang to contact Mr. Ahn.  And this was one of the things

 5    we looked at.

 6              With respect to the fact that they have been

 7    called into disrepute.  The government didn't do this.

 8    Adrian Hong Chang did.  And we take umbrage with the fact

 9    that there has been a suggestion that we have somehow

10    tarnished this organization's reputation by bringing them

11    into this case when all we are doing is trying to protect

12    our case and trying to allow Spain to extradite another

13    fugitive out there.  But, Your Honor, I will defer to the

14    Court with respect to whether or not it wants to keep

15    LINK in the order or not.

16         THE COURT:  All right.  Mr. Lee, did you have

17    anything else you wanted to say?

18         MR. LEE:  Just briefly, Your Honor.

19              I think you have it right.  The government

20    simply hasn't provided any evidence of any connection

21    between LINK and Mr. Hong Chang, and, given that they are

22    the ones making the accusations against this reputable

23    charitable organization, I think the burden is on them to

24    provide the evidence.  So I think you are right, Your

25    Honor.  I just don't think there is any basis to leave
```

```
 1    them in.

 2            THE COURT:  All right.  And certainly to the

 3    extent that any of the participants in the so-called raid

 4    or participants of Free Joseon, and I am not sure I am

 5    pronouncing that correctly, are also in LINK, certainly,

 6    the Court's order already prohibits Mr. Ahn from

 7    contacting those folks or having any communications with

 8    them.

 9            So I will grant the request to modify bond to

10    remove the condition that Mr. Ahn may have no contact

11    with LINK, but I will keep the condition that he cannot

12    have any contact with Free Joseon or Cheollima Civil

13    Defense Fund or Pegasus Strategies.  So I will -- that

14    will be the Court's order.

15            The third party video calls.  So, basically,

16    my understanding of my own order is that right now the --

17    any third party custodians who do not live with Mr. Ahn

18    are required to call him on basically every third day so

19    that once a day there is somebody who is making a video

20    call with him.  And I would be inclined to reduce that to

21    have each one of them only have to do it once a week on

22    different days.

23            Again, I just -- I really don't think that

24    Mr. Ahn is going to flee.  It is a burdensome provision.

25    I think, though, that it is not appropriate to remove
```

```
 1    that requirement entirely because these are people who

 2    are subject to very serious consequences were Mr. Ahn to

 3    flee, and I do think it is to everyone's benefit if they

 4    check in with him at least once a week and make sure that

 5    he is doing what he is supposed to do.

 6            Mr. Lee, did you want to be heard on that?

 7         MR. LEE:  Just briefly, Your Honor.  If you are

 8    not inclined to remove the condition entirely, we

 9    wouldn't push back too hard on that, but I think given

10    that right now the status quo is about twice a week, we

11    are talking about going from there to once a week, if we

12    could perhaps push you towards having it so that one

13    custodian has contact each week because, Your Honor,

14    these people have -- I am sure you are aware these people

15    have been performing these duties for several years now.

16    It has been a huge burden to them, to their families.  I

17    don't think any side disputes that burden.  It is simply

18    an issue of we don't think having each person contact him

19    every week relieves that burden quite as much as we would

20    like.

21         THE COURT:  All right.  Mr. Lulejian.

22         MR. LULEJIAN:  I think it is imperative.  They

23    volunteered to this.  The Court expressed its concern

24    early on and thought this would be a means of ensuring

25    that Mr. Ahn would be here.  If the Court wants to reduce
```

```
 1    it to one day a week for each person to contact them and

 2    have it spread out through the week, the government, we

 3    can live with that.  But having one person once a week

 4    call simply is not going to solve the problem.

 5            I mean, this has been one of the mechanisms

 6    the government has requested that the Court use in order

 7    to keep Mr. Ahn away from the possibility of fleeing, and

 8    having them regularly contact him is one of the ways to

 9    do that.  And it assures that he is in the district.  So

10    if the Court wants to reduce it, we can live with that,

11    but we would ask at least at a minimum each person be

12    required to contact him one day a week on different days

13    spread out through the seven day period.

14            MR. LEE:  Your Honor, if I could?

15            THE COURT:  Sure.

16            MR. LEE:  I just want to remind the Court that

17    these people are not strangers who have been brought in

18    to perform their duty.  They are some of Mr. Ahn's

19    closest friends, family.  Obviously, I don't want to name

20    them given the security concerns, but they are people who

21    are very closely tied to Mr. Ahn's life.  So just because

22    we are saying only one person has to call in each week,

23    that doesn't mean these people are going to be cut out of

24    Mr. Ahn's life.  They will still be in contact with him

25    naturally as they had been before all this started.
```

```
 1              So I don't think you are necessarily saying,

 2   Your Honor, you need to relieve these people of their

 3   duty to monitor Mr. Ahn.  I think they can accomplish

 4   that with one call a week plus whatever regular

 5   communications they would have with him anyway.  I would

 6   remind the Court that these people have a very strong

 7   incentive to remain in contact with Mr. Ahn given the

 8   potential penalties that could be levied against them.

 9        THE COURT:  But see the flip side of what you are

10   saying is that -- and you are right.  And I recall that

11   these people are people who are close to Mr. Ahn.  That

12   reduces the so called burden of having to call him

13   because they are people who keep in touch with him in any

14   event, and so I just don't see that it should be that big

15   of a deal for each one of them to have a video call with

16   him once a week when they probably would be in contact

17   with him anyway.

18              And I do think that, you know, that still

19   ensures that three times a week somebody is checking in,

20   making sure that he is in the district and is home.  So I

21   do think that is appropriate.  And I will reduce it, but

22   I will order that they continue, each one of them make

23   one call a week on -- they are going to have to

24   coordinate somewhat but on a different day of the week

25   spread out throughout the week.  So that somebody is
```

1   checking in by video with Mr. Ahn at least three times a

2   week total.

3            All right.  So I think it is -- I have a

4   question for the pretrial services officer.  So I know

5   that there are other sorts of -- there are other sorts of

6   location monitoring besides an ankle bracelet, but my

7   understanding is that the ankle bracelet is the only one

8   that would immediately let you know if the person has

9   gone somewhere they are not supposed to go or if they cut

10  it off.  And if you could make an appearance and also

11  answer my question, that would be great.  This is the

12  pretrial services officer.

13       THE PRETRIAL SERVICES OFFICER:  Good afternoon,

14  your Honor.  Brenda Mercado with pretrial services.

15            The GPS bracelet would be the best one for it.

16  If he removes it, we would get immediate notification of

17  the device was removed.  It tracks him all day.  So we

18  would be able to pinpoint where he is at.

19       THE COURT:  And does it work outside the district?

20       THE PRETRIAL SERVICES OFFICER:  It works outside

21  the district.  We don't use it obviously internationally.

22  It would work in other states.  He can travel with it.

23  The only issue would be is if for some reason he decides

24  he is in some area where there is remote, like horrible

25  service.  But for the most part, I mean, it works

```
 1    throughout the United States.

 2            THE COURT:  Okay.

 3            THE PRETRIAL SERVICES OFFICER:  Most of our

 4    offices have the same company they use.

 5            THE COURT:  All right.  Thank you very much.

 6            THE PRETRIAL SERVICES OFFICER:  You are welcome.

 7            THE COURT:  So I think I would be okay with

 8    Mr. Ahn's request that he -- let me just get the exact

 9    language of the request.  I am looking at page 15 of his

10    memorandum.  It says that Mr. Ahn proposes that he be

11    able to travel freely within the Central District of

12    California and throughout the United States with

13    permission of pretrial services but that would only be

14    apparently for work because it says he would provide a

15    note from his employer, proof of his itinerary and

16    advance notice so that pretrial can look at this and make

17    sure that it is appropriate.

18            So I don't have a problem with him, as long as

19    he maintains the GPS monitoring, him traveling for work

20    outside of the district under the restrictions that he

21    has proposed.  I do think that when he is not traveling

22    for work, I do still think that that curfew of midnight

23    to 7:00 a.m., let's say, is appropriate.  I don't see why

24    Mr. Ahn -- I mean, he has been found to be extraditable

25    to Spain.  It is a very serious case, and there is a
```

1    strong interest of the government here.

2            And maybe I would be willing if I personally

3    and maybe I would be the one signing off on it, I don't

4    know, but I don't have a problem if Mr. Ahn wanted to get

5    advance permission to go away for a weekend with his wife

6    or something like that if he provides an itinerary and

7    all of that.  But, absent some sort of approved travel

8    within the United States, I do think it is appropriate

9    for him to be at his house at night.

10            So those are my thoughts there, Mr. Lee.

11        MR. LEE:  Thank you, Your Honor.  Just to clarify,

12    the Court's tentative is that Mr. Ahn would be allowed to

13    travel freely within the district and also interstate

14    travel with approval of pretrial services notwithstanding

15    the purpose of that travel?

16        THE COURT:  Well, no.  So, for work, he would have

17    to get pretrial services' approval.  And then if there

18    were some other reason, I think it would have to be the

19    Court's approval.  The pretrial services officer is

20    nodding.

21        THE PRETRIAL SERVICES OFFICER:  Yes, Your Honor.

22    For work purposes, we can go ahead and we would be able

23    to, but, for anything else, he wants to take like a

24    weekend trip or anything, we would defer to the Court.

25        THE COURT:  And, then, also, Mr. Lee, the curfew

1    would remain in place absent some approved travel.

2          MR. LEE:  Yes, Your Honor.  So if Mr. Ahn is on an

3    approved business trip or something like that, the curfew

4    would not be in place.  Is that correct?

5          THE COURT:  I missed the last part of what you

6    said.

7          MR. LEE:  Just to confirm, if Mr. Ahn is on a

8    approved business trip or other travel, the curfew would

9    not be in place.  Is that correct, Your Honor?

10         THE COURT:  Well, I would think that the itinerary

11   would involve him telling pretrial where he was going to

12   be staying, and I think I would expect that he be there

13   between midnight and 7:00 a.m.

14         MR. LEE:  Yes, Your Honor.  I am just trying to

15   clarify for purposes if Mr. Ahn is traveling to another

16   state, I imagine there could be red eye flights involved.

17   I imagine there could be time zone differences.  I just

18   want to be absolutely clear what the Court's order is.

19         THE COURT:  I think all of that would have to be

20   approved by pretrial ahead of time.  The work related

21   stuff is going to be subject to pretrial's approval, and,

22   if they say you can take the red eye flights, that is

23   fine with me.  But, generally, the curfew is going to be

24   in place, I think.

25         MR. LEE:  Understood, Your Honor.  So we have no

1    issue with that.  I think we would just ask to address

2    you briefly on the issue of GPS location monitoring.  If

3    you want to do that later, we can do that later.

4         THE COURT:  I am happy to hear it now.

5         MR. LEE:  Yes, Your Honor.  Your Honor, I think

6    what is important to note here is what we are deciding

7    here is not just what Mr. Ahn's bail conditions will be

8    today.  It is what Mr. Ahn's bail conditions will be in

9    the future because, as Your Honor has acknowledged, this

10   is a unique case, a very serious case, a case with

11   enormous stakes and a case involving novel legal issues.

12        And we would submit to you, Your Honor, we do

13   intend -- because Mr. Ahn has a very strong incentive to

14   contest his extradition to Spain where his life will be

15   in danger.  We do intend to appeal this case through

16   every avenue available, through the Ninth Circuit if

17   necessary, through the Supreme Court if necessary.

18        And, because of that, this case could be at

19   issue for another two, three, four or five years, and,

20   given those circumstances and given that Mr. Ahn has

21   already been subject to the ankle bracelet for three

22   years, we think it is excessive and not in the spirit of

23   the Bail Reform Act to have him subject to that same

24   ankle bracelet for an additional number of years.

25        Your Honor, we cited a case in our briefing.

1    It is a significant breach of an individual's liberty

2    interest to subject them to 24-hour location monitoring.

3    It is not something that is imposed lightly.  And, aside

4    from the inconvenience, I think what really concerns us

5    for Mr. Ahn is the social stigma that is involved with an

6    ankle bracelet in particular.

7         As Your Honor knows, colloquially, the term

8    ankle bracelet is most frequently associated with a

9    particular type of crime, most often sex offenses.  And

10   it is very difficult for Mr. Ahn as someone who is

11   outward facing and meeting different people every day out

12   in the community to explain why he has this device

13   attached to him.  And we are just very concerned that it

14   will affect his life significantly if he has to do that

15   for a total of five, six, seven, eight, nine years.  That

16   will affect his life.  That will affect his job

17   opportunities.  And we would hope the Court would find

18   that is excessive given that you have acknowledged that

19   he is not a flight risk.

20        THE COURT:  All right.  Mr. Lulejian.

21        MR. LULEJIAN:  I think as a legal matter, Your

22   Honor, this is not a criminal case, and, therefore, the

23   Bail Reform Act does not apply.  With respect to being

24   excessive, Your Honor, Mr. Ahn is the one who decided to

25   go over to Spain.  Mr. Ahn is the one that broke into the

1   embassy.  Mr. Ahn is the one who took hostages.  Mr. Ahn

2   and his confederates are the ones that participated.  And

3   so Mr. Ahn is back here.  In most districts, Your Honor,

4   Mr. Ahn would be sitting in a jail cell under the law.

5   In this district, however, he is not, and the government

6   is not moving to do so.

7        THE COURT:  So you are basically telling me that I

8   am nuts?

9        MR. LULEJIAN:  No, I am not saying you are nuts,

10  Your Honor.  I think Your Honor has been very reasonable

11  in this case with respect to the practice of this

12  district, but putting him on an ankle bracelet is not --

13  considering the options that are out there for the Court

14  is a very reasonable balance.  The point is that he has

15  got to be tracked.  The consequences are so high, Your

16  Honor, we have got to make sure he doesn't run.  And, if

17  he runs, Your Honor, we are going to have all sort of

18  international problems.  We talked about this, and I know

19  people roll their eyes and say you are exaggerating.  We

20  are not exaggerating, Your Honor.  This has serious

21  consequences if he runs.

22        Putting him on an ankle bracelet, Your Honor,

23  keeps him there.  If it is a social stigma, people are

24  going to Google him.  They are going to see what he has

25  done.  They can see the Court's order.  He can explain

1    that I am under monitoring with the Court.

2            We do use ankle bracelets for things other

3    than sex offenders.  So suggesting that I think is a bit

4    of an overreach, Your Honor.  So, Your Honor, I think the

5    ankle bracelet is certainly appropriate.

6            With respect to travel, I think that, you

7    know, travel within the district is fine.  If the Court

8    wants to approve travel through pretrial services outside

9    the district for business purposes, the government is not

10   going to object.  But that ankle bracelet really needs to

11   be there.  It is the only way we can keep track of him.

12       THE COURT:  Before I hear from you again, Mr. Lee,

13   I do want to say, Mr. Lulejian, I do agree with you as a

14   legal matter when you read the statute -- and I have said

15   this in many other cases, and I think I have said it in

16   this case.  When you read the statute, it does seem to

17   say that if someone has been certified for extradition,

18   they should be incarcerated and detained pending that

19   transfer, but the Ninth Circuit says that is not the law.

20           And I don't, as I said, I don't think Mr. Ahn

21   is a flight risk.  If the Ninth Circuit had not said that

22   I was wrong about my interpretation and your

23   interpretation of the statute, then Mr. Ahn would be

24   detained, but, again, the Ninth Circuit said that, in

25   Salerno and in a number of other cases, that bail after

1   certification is appropriate in certain circumstances,

2   and I happen to think it is here.

3          But, as a legal matter, I sort of agree with

4   your interpretation of the statute, but it is beside the

5   point because the Ninth Circuit has said otherwise.

6        MR. LULEJIAN:  Given Salerno, Your Honor, which is

7   one of the reasons we are not pushing the issue, we

8   raised the argument to preserve the issue with respect to

9   our nationwide position.  I am telling Your Honor what

10  other districts and other circuits have done.  I do think

11  that, Your Honor, some restraint needs to happen or some

12  means of -- I'm sorry.

13       THE COURT:  I think I agree with you.  I am not --

14  Mr. Lee has not convinced me to get rid of the ankle

15  bracelet.  I was thinking the same things you were that

16  this is not a circumstance where somebody would have to

17  take Mr. Ahn at his word that he is not a sex offender

18  or he is not some violent criminal or whatever, and he

19  can tell them this.  You can just get on the Internet and

20  easily see what an unusual case this is and what it is

21  that he is he is alleged to have done.

22         And so I appreciate the stigma argument, but I

23  think that is less of an issue here than in a lot of

24  cases, and I do think that Mr. Lulejian is correct that,

25  you know, even before he had been certified for

1    extradition, there was -- in all extradition cases, there

2    is a very strong presumption against bond.

3             I did find that there was a special

4    circumstance.  I still don't think Mr. Ahn should be

5    extradited, and I don't really think he is a flight risk.

6    But I understand, as Mr. Lulejian says that, you know,

7    the consequences in this case, if Mr. Ahn were to flee,

8    are very grave and the ankle bracelet is a heck of a lot

9    better than him sitting in some jail somewhere.

10            So I am trying to strike a balance because

11   there are strong interests on both sides.  I wish we

12   weren't here.  I know Mr. Ahn wishes we weren't here.

13   But we are, and I am just trying to ensure that he has as

14   much freedom as possible without running too strong a

15   risk of the very serious consequences that would result

16   in the unlikely event that he were to flee.

17            MR. LULEJIAN:  I think what I am saying, Your

18   Honor, is, given what Your Honor has talked about with

19   respect to intra-district travel and travel outside the

20   district, I think the ankle bracelet is a small price to

21   pay, and it does strike that balance between giving him

22   the freedom that he needs in order to live his life and

23   support his family.

24            THE COURT:  All right.

25            Mr. Lee, you can keep trying to convince me

1    otherwise.  I am happy to listen.

2          MR. LEE:  With your indulgence, Your Honor, I

3    would like to try just one last time.

4          THE COURT:  Sure.

5          MR. LEE:  I really do think we need to be guided

6    by the Bail Reform Act here.  Mr. Lulejian and I had this

7    same exact conversation about two-and-a-half years ago in

8    this courtroom when you were trying to decide whether to

9    let Mr. Ahn out of jail, and that was the same question

10   which is does the Bail Reform Act apply to these

11   circumstances.

12          And I think what we landed on at that hearing

13   was that, while the Bail Reform Act does not formally

14   apply to extradition proceedings, it is what the courts

15   look to for guidance.  We cited the case of Nacif Borge

16   in our briefing.  I think it is pretty clear from that

17   case if anything modifies the district court's discretion

18   here it is the Bail Reform Act, and the Bail Reform Act

19   says that you have to subject Mr. Ahn to the least

20   restrictive combination of conditions to reasonably

21   assure his appearance at trial.

22          And, Your Honor, I would submit you have found

23   that Mr. Ahn is not a flight risk.  And I think, frankly,

24   in their heart of hearts, I don't think even the

25   government believes that Mr. Ahn would actually flee.

```
 1   Nobody in this courtroom thinks he is not going to appear

 2   for his next appearance.

 3            Given these circumstances, given the lack of

 4   flight risk, I would submit that the guidelines of the

 5   Bail Reform Act oblige you to impose less restrictive

 6   circumstances here because, if he is not going to flee, I

 7   don't think it is necessary for pretrial to be able to,

 8   to be monitoring his location 24 hours every day

 9   especially given that they have less intrusive means of

10   location monitoring.

11            I think at a minimum we should hear from

12   pretrial what those means are and what capabilities are

13   available there and how that would differ from GPS

14   location monitoring.

15       THE COURT:  Well, I have in front of me a thing

16   that, from pretrial, I believe, that describes the

17   different types of location monitoring of which there are

18   four.

19            One is an automated phone call system that

20   calls the participant at home, assumes that they are on

21   some sort of curfew and make sure that they are there

22   during the curfew time, but it doesn't keep track at all

23   and I appreciate the nodding.  She is nodding when I am

24   getting it right.  And I may well not get it right so I

25   appreciate that.  But it cannot track at all or know the
```

1    person's location when they are not on a curfew.  So it

2    seems to me that that system would only be appropriate if

3    somebody had home incarceration or something.

4              Same thing with the virtual biometric

5    monitoring.  It verifies the person's location through

6    checking in with their cell phone.  So, theoretically,

7    you think somebody has always got their cell phone with

8    them so it would be able to tell where the person was and

9    you would know if they weren't where they were supposed

10   to be, but it is easily circumvented because they just

11   leave their cell phone at home.  You buy a burner phone,

12   and you are gone.

13             And, moreover, it is not an immediate

14   notification because if somebody left their cell phone at

15   home, you would simply think they were at home, and it

16   would be hours maybe or days even before you discovered

17   that they were not, that they had fled.

18             And the only other sort of technology is radio

19   frequency which, again, can only monitor their presence

20   at a specific location because there is a device there

21   and it tells when they come and when they go.

22             So did I get it right?

23         THE PRETRIAL SERVICES OFFICER:  Yes, Your Honor.

24         THE COURT:  Is there any other type of location

25   monitoring?

KATIE THIBODEAUX, CSR, RPR, CRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1          THE PRETRIAL SERVICES OFFICER:  Those are the ones
 2     you mentioned, and the GPS bracelet.  That is all we
 3     have.
 4          THE COURT:  I pulled this out because I wanted to
 5     see for myself if there was any other sort of monitoring
 6     that would be less intrusive but would ensure immediate
 7     notification of any sort of flight, and, unfortunately,
 8     there is not.
 9          So I am happy, you know, just as I was with
10     the third party custodians, if you come up with some kind
11     of way to ensure that he is at all times where he is
12     supposed to be, I would consider that, but, right now,
13     the only way to do that is through the GPS, the ankle
14     monitor.
15          MR. LEE:  Your Honor, I think having heard these
16     alternative options, I think the only way in which the
17     virtual biometric monitoring falls short of the ankle
18     monitor is that, if he decides to run, it is less lead
19     time because, Your Honor, if he decides to run right now,
20     he could break his ankle monitor and start running.
21          THE COURT:  Right.  And we would know about it
22     immediately.
23          MR. LEE:  That would be a quick notice.  On the
24     other hand, the virtual biometric monitoring, it might be
25     a little while before somebody notices that he doesn't
```

1  have his phone with him.  Your Honor, I would submit we

2  can mitigate this a couple of ways.  First of all, we can

3  mitigate this by combining I think two requirements.  I

4  think you mentioned -- the first option you mentioned

5  involves kind of a phone call from pretrial.

6       THE COURT:  That is when you know they are going

7  to be at home so during the curfew period.

8       MR. LEE:  So if pretrial sees that Mr. Ahn's phone

9  is stationary at home in some kind of suspicious manner

10  if he hasn't accessed it for 16 hours, they have the

11  ability to make that call and confirm that the phone is

12  still with him.  And I would also submit that because we

13  are keeping that custodian video call requirement in

14  place, even if Mr. Ahn decides to run while under this

15  virtual biometric monitoring, the maximum amount of lead

16  time he could have Your Honor is maybe a day.

17       THE COURT:  Well, a couple of days because, if I

18  am reducing the third party calls to three times a week

19  total, there is going to be at least two days between

20  them.  And, if he left his phone at home, left and, you

21  know, it could be hours or even a couple of days before

22  somebody noticed that he wasn't with his phone.

23       MR. LEE:  But if you combine that, Your Honor,

24  with -- combine the biometric monitoring with the

25  custodian calls.  And we can discuss the schedule of

1    custodian calls if there is an alternative schedule that

2    would make you feel more comfortable.

3         THE COURT:  But I think that through the voice

4    recognition which you are talking about combining with

5    they call at a particular time, pretrial can correct me,

6    but sort of programmed to call during the times that he

7    is on a curfew.  And I don't think, if he just happened

8    to leave his phone at home when he is -- during the

9    middle of the day when that wasn't programmed for, I

10   don't think -- somebody is not monitoring that 24/7 to

11   make sure his phone isn't stationary for too long.

12           Is that correct?

13        THE PRETRIAL SERVICES OFFICER:  That's correct,

14   Your Honor.  Because he is on a curfew, the check in

15   request would come in during his curfew.  So outside of

16   the curfew hours, he is not going to be receiving these

17   check in requests, and he would be unmonitored during the

18   time that he is out.

19        THE COURT:  So, Mr. Lee, I did think about this,

20   and I did look into it, and I just don't think that other

21   than the location monitoring bracelet, there is a way to

22   ensure immediate notification of any failure to be where

23   he is supposed to be or any failure to -- or any active

24   fleeing.

25           But if you -- so I don't -- I don't think we

1    can hash this out right now, but, after this hearing, if

2    you talk to pretrial or you come up with something else,

3    I am always happen to consider it.

4            MR. LEE:  Thank you, Your Honor.

5            Just to put one more fact about Mr. Ahn's

6    flight risk on the record.  I do want to note that as the

7    Court noted at the outset, there was an inadvertently

8    entered order two weeks earlier, and, for an entire

9    weekend, Mr. Ahn had a court order saying you can take

10   off your ankle monitor, you can go wherever.  He did not

11   do that, Your Honor.  If Mr. Ahn had any intention to

12   flee, that weekend, those three days, three ful days when

13   that order was active, that was his opportunity.

14           I think that speaks volumes as to the fact

15   that he did not take off his ankle monitor.  He stayed

16   where he was and waited for confirmation.  I think that

17   speaks volumes as to the fact that there is very, very,

18   little risk of Mr. Ahn fleeing in this case your Honor.

19           THE COURT:  If this were a criminal case, I would

20   a hundred percent agree with you because I don't -- I

21   have said it.  I will say it again.  I don't think he is

22   going to flee.  I think that the chances of that are very

23   small, but this is an extradition case with a strong

24   presumption against bond, and, moreover, this case is sui

25   generis because the risk here to the United States if

KATIE THIBODEAUX, CSR, RPR, CRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    Mr. Ahn were to flee is significantly greater than in the

2    run of the mill case where, you know, just your average

3    criminal, if there is such a thing, were to flee.

4         So I feel beholden to do something that

5    ensures that that risk is minimized.  I, again, you know,

6    I may well be wrong, and you are welcome to take this up

7    with Judge Aenlle-Rocha.  He may feel differently.  And,

8    you know, that is okay with me.  I won't be offended.

9    And if he orders it, then that is fine.  But I just, I

10   have to strike this balance where I think it is

11   appropriate.

12        MR. LEE:  I understand, Your Honor.  We will

13   certainly take you up on your invitation to come back

14   with alternative methods of monitoring.  So we will keep

15   pushing back on that, but I understand the Court's

16   ruling.

17        THE COURT:  All right.  I appreciate it.  All

18   right.  So I think we have covered everything.

19        So the order of the Court is going to be that

20   the request to modify the bond is granted to the

21   following extent:  And, Mr. Lee, I am going to -- to help

22   Ms. Martinez out, I am going to ask because we have now

23   had along the way of these last three years several

24   modifications of the bond and there is all these

25   different orders that she has to look at, so if you could

KATIE THIBODEAUX, CSR, RPR, CRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   submit one proposed bond with all the modifications of
 2   the bond as it currently stands given the order I am
 3   about to make, I think that would be very helpful to
 4   Ms. Martinez.
 5          MR. LEE:  Understood, Your Honor.
 6          THE COURT:  And, you know, show it to Mr. Lulejian
 7   first just to make sure.
 8              All right.  So the application is granted as
 9   follows:  I will remove the restriction on contact with
10   LINK.  I will reduce the amount that the third party
11   custodians -- and I should say for the record by the way
12   that they have all submitted written consent as required
13   by our local rules to the even greater proposed
14   modification so clearly they have consented to these
15   lesser ones I am going to impose.
16              I will remove the requirement that the third
17   party custodians who don't live with Mr. Ahn call as a
18   group collectively at least once a day, video, and I will
19   make that that each of them has to call once a week
20   spread out through the week.
21              So, Mr. Lee, you are going to have to work
22   with them to make sure that the scheduling of that
23   complies with my order.
24              I will reduce Mr. Ahn's curfew.  It is
25   currently midnight to 8:00 a.m..  I am going to make it
```

1    midnight to 7:00 a.m..

2              I am going to deny the motion as to the

3    removal of the location monitoring bracelet, but I will

4    increase the area that Mr. Ahn is allowed to travel to

5    the entire Central District of California.  If he wants

6    to travel for work purposes outside of the Central

7    District of California, he may do so with the approval of

8    pretrial provided that he, in advance, gives pretrial,

9    you know, his itinerary including the travel, a note, you

10   know, verifying employment from his employer -- I'm

11   sorry -- the travel from his employer and that advanced

12   notice.

13             If he wants to travel and stay somewhere

14   overnight for any purpose other than employment, you

15   know, you should meet and confer with Mr. Lulejian.  If

16   you can't agree, you can make an application to me or to

17   Judge Aenlle-Rocha if he -- I don't know who it would go

18   to first.  I am happy to handle it.  File it in front of

19   me, and then I will make sure that he wants me to handle

20   it.

21             So that will be the order of the Court.  I

22   think I covered everything.

23             Did I miss anything?

24        MR. LULEJIAN:  No, Your Honor.  I think it covered

25   everything.

```
1           MR. LEE:  We agree, Your Honor.

2           THE COURT:  Mr. Lee, by when can you submit the

3    proposed -- today is Friday.  So can you do it by like

4    Tuesday of next week?

5           MR. LEE:  That shouldn't be a problem, Your Honor.

6           THE COURT:  All right.  Make sure, again, to show

7    it to Mr. Lulejian first.

8              So that would be the 27th you will submit

9    that, and, if you can do it sooner, that is great too.

10             All right.  Is there anything further?

11          MR. LULEJIAN:  Nothing from the United States,

12   Your Honor.

13          MR. LEE:  Nothing for Mr. Ahn, Your Honor.

14          THE COURT:  All right.  Thank you.

15          (Proceedings concluded.)

16

17

18

19

20

21

22

23

24

25
```

```
 1                            CERTIFICATE

 2

 3

 4     I hereby certify that pursuant to Section 753, Title 28,

 5     United States Code, the foregoing is a true and correct

 6     transcript of the stenographically reported proceedings held

 7     in the above-entitled matter and that the transcript page

 8     format is in conformance with the regulations of the

 9     Judicial Conference of the United States.

10     Date:  November 27, 2022

11

12      /s/ Katie Thibodeaux, CSR No. 9858, RPR, CRR

13

14

15

16

17

18

19

20

21

22

23

24

25
```

MR. LEE: **[29]**
MR. LULEJIAN: **[12]**   3/7 10/4
10/18 11/14 11/24 14/21
22/20 23/8 25/5 26/16 36/23
37/10
RIGHT2: **[1]**   4/5
THE CLERK: **[1]**   3/3
THE COURT: **[47]**
THE PRETRIAL SERVICES
OFFICER: **[8]**   17/12 17/19
18/2 18/5 19/20 29/22 29/25
32/12

/

/s **[1]**   38/12

1

15 **[1]**   18/9
16 **[1]**   31/10
1875 **[1]**   2/11
19-5397 **[1]**   1/8
19-5397-JWF **[1]**   3/6
1:33 **[1]**   3/2
1st **[1]**   1/20

2

2008 **[1]**   10/21
2022 **[3]**   1/15 3/1 38/10
23 **[2]**   1/15 3/1
24 **[1]**   28/8
24-hour **[1]**   22/2
24/7 **[1]**   32/10
27 **[1]**   38/10
27th **[1]**   37/8
28 **[1]**   38/4

3

312 **[1]**   2/5
350 **[1]**   1/20

4

4311 **[1]**   1/20

5

50 miles **[1]**   6/22
501.3 **[1]**   10/11
5397 **[1]**   1/8

7

753 **[1]**   38/4
7:00 **[1]**   6/10
7:00 a.m **[3]**   18/23 20/13
36/1

8

8:00 a.m **[2]**   6/9 35/25

9

90012 **[2]**   1/21 2/6
90067 **[1]**   2/12
9858 **[2]**   1/19 38/12

A

a.m **[6]**   6/9 6/10 18/23 20/13
35/25 36/1
ability **[1]**   31/11
able **[6]**   3/15 17/18 18/11
19/22 28/7 29/8
about **[18]**   7/2 7/12 8/5 8/8
9/13 10/1 12/3 14/10 14/11
23/18 24/22 26/18 27/7 30/21
32/4 32/19 33/5 35/3
above **[1]**   38/7
above-entitled **[1]**   38/7
absconded **[1]**   6/7
absent **[2]**   19/7 20/1
absolutely **[1]**   20/18

abundance **[1]**   9/21
accept **[1]**   35/7
accessed **[1]**   31/10
accomplish **[1]**   16/3
accurate **[1]**   10/2
accusations **[1]**   12/22
acknowledged **[2]**   21/9 22/18
Act **[8]**   21/23 22/23 27/6
27/10 27/13 27/18 27/18 28/5
active **[2]**   32/23 33/13
activity **[1]**   7/19
actual **[1]**   11/18
actually **[2]**   10/11 27/25
additional **[1]**   21/24
address **[2]**   8/8 21/1
Adrian **[4]**   10/6 10/22 11/1
12/8
advance **[3]**   18/16 19/5 36/8
advanced **[1]**   36/11
Aenlle **[3]**   3/21 34/7 36/17
Aenlle-Rocha **[3]**   3/21 34/7
36/17
affect **[3]**   22/14 22/16 22/16
affiliation **[1]**   10/18
after **[2]**   24/25 33/1
afternoon **[3]**   3/8 3/11 17/13
again **[7]**   13/23 24/12 24/24
29/19 33/21 34/5 37/6
against **[6]**   4/22 5/5 12/22
16/8 26/2 33/24
ago **[2]**   8/4 27/7
agree **[7]**   7/12 24/13 25/3
25/13 33/20 36/16 37/1
ahead **[4]**   5/11 10/12 19/22
20/20
Ahn **[61]**
Ahn's **[12]**   3/19 3/23 7/21
15/18 15/21 15/24 18/8 21/7
21/8 31/8 33/5 35/24
all **[37]**
allegations **[3]**   4/22 5/5 9/8
alleged **[2]**   7/22 25/21
allow **[2]**   11/6 12/12
allowed **[2]**   19/12 36/4
along **[1]**   34/23
already **[2]**   13/6 21/21
also **[8]**   6/8 7/3 9/4 13/5
17/10 19/13 19/25 31/12
alternative **[3]**   30/16 32/1
34/14
although **[3]**   5/25 6/9 7/13
always **[2]**   29/7 33/3
am **[33]**
America **[3]**   1/6 2/3 3/9
American **[2]**   8/25 9/2
amount **[2]**   31/15 35/10
ANGELES **[5]**   1/14 1/21 2/6
2/12 3/1
ankle **[20]**
Ann **[1]**   4/7
another **[4]**   6/12 12/12 20/15
21/19
answer **[1]**   17/11
any **[25]**
anyone **[1]**   9/1
anything **[9]**   7/9 8/17 10/4
12/17 19/23 19/24 27/17
36/23 37/10
anyway **[2]**   16/5 16/17
apologies **[1]**   3/13
apologize **[2]**   3/15 4/10
apparently **[2]**   7/9 18/14
appeal **[1]**   21/15
appear **[1]**   28/1
appearance **[4]**   4/4 17/10
27/21 28/2
APPEARANCES **[1]**   2/1
application **[4]**   4/12 4/16
35/8 36/16

apply **[3]**   22/23 27/10 27/14
appraiser **[1]**   8/23
appreciate **[1]**   27/4 28/23
28/25 34/17
appropriate **[11]**   8/1 9/9
13/25 16/21 18/17 18/23 19/8
24/5 25/1 29/2 34/11
approval **[5]**   19/14 19/17
19/19 20/21 36/7
approve **[1]**   24/8
approved **[5]**   19/7 20/1 20/3
20/8 20/20
are **[79]**
area **[2]**   17/24 36/4
argues **[1]**   5/18
argument **[4]**   7/2 7/12 25/8
25/22
around **[1]**   6/3
as **[34]**
aside **[1]**   22/3
ask **[3]**   15/11 21/1 34/22
asks **[1]**   6/11
associated **[2]**   9/7 22/8
associating **[1]**   9/1
assumes **[1]**   28/20
assure **[1]**   27/21
assures **[1]**   15/9
attached **[1]**   22/13
ATTORNEY'S **[1]**   2/4
AUSA **[1]**   2/5
automated **[1]**   28/19
available **[2]**   21/16 28/13
avenue **[2]**   11/16 21/16
average **[1]**   34/2
avoid **[2]**   9/1 9/2
aware **[1]**   14/14
away **[2]**   15/7 19/5

B

back **[4]**   14/9 23/3 34/13
34/15
bail **[11]**   21/7 21/8 21/23
22/23 24/25 27/6 27/10 27/13
27/18 27/18 28/5
balance **[5]**   5/20 23/14 26/10
26/21 34/10
bases **[1]**   12/2
basically **[3]**   13/15 13/18
23/7
basis **[2]**   11/22 12/25
be **[87]**
because **[27]**
been **[21]**
before **[7]**   3/21 15/25 24/12
25/25 29/16 30/25 31/21
behalf **[4]**   2/3 2/9 3/9 3/12
beholden **[1]**   34/4
being **[2]**   10/10 22/23
believe **[3]**   3/23 6/4 28/16
believes **[1]**   27/25
benefit **[1]**   14/3
beside **[1]**   25/4
besides **[1]**   17/6
best **[1]**   17/15
better **[1]**   26/9
between **[5]**   6/22 12/21 20/13
26/21 31/19
beyond **[1]**   5/13
big **[2]**   6/22 16/14
biometric **[5]**   29/4 30/17
30/24 31/15 31/24
BIRD **[1]**   2/10
bit **[2]**   9/12 24/3
board **[1]**   10/12
bond **[9]**   4/18 5/9 13/9 26/2
33/24 34/20 34/24 35/1 35/2
Borge **[1]**   27/15
both **[4]**   4/1 4/19 11/11
26/11
BOXER **[1]**   2/10

**B**

bracelet [18]   7/4 17/6 17/7
17/15 21/21 21/24 22/6 22/8
23/12 23/22 24/5 24/10 25/15
26/8 26/20 30/2 32/21 36/3
bracelets [1]   24/2
breach [1]   22/1
break [1]   30/20
Brenda [1]   17/14
briefing [2]   21/25 27/16
briefly [4]   8/19 12/18 14/7
21/2
bring [1]   10/8
bringing [1]   12/10
broke [1]   22/25
brought [2]   9/6 15/17
burden [6]   9/4 12/23 14/16
14/17 14/19 16/12
burdensome [1]   13/24
burner [1]   29/11
business [3]   20/3 20/8 24/9
buy [1]   29/11

**C**

CA [3]   1/21 2/6 2/12
CALIFORNIA [8]   1/2 1/14 3/1
6/23 6/25 18/12 36/5 36/7
call [16]   13/18 13/20 15/4
15/22 16/4 16/12 16/15 16/23
28/19 31/5 31/11 31/13 32/5
32/6 35/17 35/19
called [4]   3/14 12/7 13/3
16/12
Calling [1]   3/6
calls [5]   13/15 28/20 31/18
31/25 32/1
campuses [1]   10/15
can [31]
can't [3]   6/2 11/22 36/16
cannot [2]   13/11 28/25
capabilities [1]   28/12
care [2]   9/25 10/17
case [23]
cases [4]   24/15 24/25 25/24
26/1
cause [2]   4/23 5/4
caused [1]   4/14
caution [1]   9/21
cautious [1]   11/16
cell [5]   23/4 29/6 29/7
29/11 29/14
CENTRAL [6]   1/2 6/22 6/24
18/11 36/5 36/6
Century [1]   2/11
certain [3]   9/18 9/23 25/1
certainly [7]   4/21 5/10 5/25
13/2 13/5 24/5 34/13
CERTIFICATE [1]   38/1
certification [1]   25/1
certified [3]   5/6 24/17
25/25
certify [1]   38/4
chances [1]   33/22
Chang [14]   7/9 8/4 9/16 10/6
10/18 10/22 11/1 11/7 11/12
11/14 11/19 12/4 12/8 12/21
changed [3]   4/17 4/19 5/8
charitable [1]   12/23
chat [1]   6/15
check [3]   14/4 32/14 32/17
checked [1]   6/19
checking [3]   16/19 17/1 29/6
Cheollima [2]   7/25 13/12
CHRISPHER [1]   2/11
Christopher [1]   1/9 3/7 3/11
Circuit [6]   5/13 21/16 24/19
24/21 24/24 25/5
circuits [1]   25/10

circumstance [2]   25/16 26/4
circumstances [3]   4/24 5/1
5/8 21/21 27/11 28/3
28/6
circumvented [1]   29/10
cited [2]   21/25 27/15
Civil [2]   7/25 13/12
clarify [2]   19/11 20/15
clear [2]   20/18 27/16
clearly [1]   35/14
close [1]   16/11
closely [1]   15/21
closest [1]   15/19
co [1]   3/13
co-counsel [1]   3/13
Code [1]   38/5
collectively [1]   35/18
college [3]   10/10 10/14
10/15
colloquially [1]   22/7
combination [1]   27/20
combine [2]   31/23 31/24
combining [2]   31/3 32/4
come [5]   29/21 30/10 32/15
33/2 34/13
comfortable [1]   32/2
coming [1]   12/1
committed [1]   7/22
communication [1]   9/10
communications [2]   13/7 16/5
community [3]   8/25 9/3 22/2
company [3]   9/15 10/14 18/4
complies [1]   35/23
concern [5]   5/10 9/24 11/5
12/3 14/23
concerned [1]   22/13
concerning [1]   8/16
concerns [4]   10/21 10/23
15/20 22/4
concluded [1]   37/15
condition [4]   7/10 13/10
13/11 14/8
conditions [8]   3/20 5/22
8/13 8/15 11/6 21/7 21/8
27/20
confederates [2]   11/7 23/2
confer [1]   36/15
Conference [1]   38/9
confirm [2]   20/7 31/11
confirmation [1]   33/16
conformance [1]   38/8
connection [1]   12/20
consent [1]   35/12
consented [1]   35/14
consequences [6]   5/18 14/2
23/15 23/21 26/7 26/15
consider [2]   30/12 33/3
considering [1]   23/13
conspiring [1]   11/20
consternation [1]   4/14
consulting [2]   8/3 9/15
contact [17]   7/6 7/8 7/23
11/1 11/23 12/4 13/10 13/12
14/13 14/18 15/1 15/8 15/12
15/24 16/7 16/16 35/9
contacting [1]   13/7
contacts [1]   10/24
contest [1]   21/14
continue [1]   16/22
conversation [1]   27/7
convince [1]   26/25
convinced [1]   25/14
coordinate [1]   16/24
corporation [1]   10/11
correct [8]   3/25 20/4 20/9
25/24 32/5 32/12 32/13 38/5
correctly [1]   13/5
could [17]   4/4 4/24 5/5 6/10
6/24 11/12 14/12 15/14 16/8

17/10 20/16 20/17 21/18
21/19 34/16
counsel [6]   2/1 3/13 6/1
7/21 8/7 8/10 8/10
counts [2]   4/24 5/7
couple [3]   31/2 31/17 31/21
court [21]
court's [8]   13/6 13/14 19/12
19/19 20/18 23/25 27/17
34/15
courtroom [2]   27/8 28/1
courts [1]   27/14
cover [1]   12/1
covered [3]   34/18 36/22
36/24
crime [1]   22/9
crimes [1]   7/22
criminal [7]   7/14 7/15 7/19
22/22 25/18 33/19 34/3
CRR [1]   38/12
CSR [2]   1/19 38/12
curfew [15]   6/8 18/22 19/25
20/3 20/8 20/23 28/21 28/22
29/1 31/7 32/7 32/14 32/15
32/16 35/24
current [1]   10/18
currently [2]   35/2 35/25
custodian [4]   14/13 31/13
31/25 32/1
custodians [6]   6/14 6/17
13/17 30/10 35/11 35/17
cut [2]   15/23 17/9
CV [2]   1/8 3/6

**D**

danger [1]   21/15
Date [1]   38/10
day [14]   6/15 6/19 13/18
13/19 15/1 15/12 15/13 16/24
17/17 22/11 28/8 31/16 32/9
35/18
days [8]   13/22 15/12 29/16
31/17 31/19 31/21 33/12
33/12
deal [2]   12/3 16/15
dealt [1]   9/17
decide [2]   11/8 27/8
decided [1]   22/24
decides [4]   17/23 30/18
30/19 31/14
deciding [1]   21/6
DEFENDANT [2]   1/9 2/9
Defense [2]   7/25 13/13
defer [2]   12/13 19/24
definition [1]   7/14
degree [1]   6/12
demonstrated [1]   11/2
deny [1]   36/2
DEPARTMENT [1]   2/4
depending [1]   5/12
described [1]   11/4
describes [1]   28/16
detained [2]   24/18 24/24
deterrents [1]   5/21
device [3]   17/17 22/12 29/20
did [15]   5/4 7/13 8/17 9/18
10/3 12/8 12/16 14/6 26/3
29/22 32/19 32/20 33/10
33/15 36/23
didn't [1]   12/7
differ [1]   28/13
difference [1]   6/22
differences [1]   20/17
different [7]   6/19 13/22
15/12 16/24 22/11 28/17
34/25
differently [1]   34/7
difficult [1]   22/10
directly [1]   9/23

## D

**directors [1]** 10/12
**discovered [1]** 29/16
**discretion [1]** 27/17
**discuss [1]** 31/25
**discussions [1]** 7/8
**disputes [1]** 14/17
**disrepute [1]** 12/7
**district [24]**
**districts [2]** 23/3 25/10
**DIVISION [1]** 1/2
**do [41]**
**docketing [1]** 4/10
**does [6]** 17/19 22/23 24/16
26/21 27/10 27/13
**doesn't [6]** 7/7 11/23 15/23
23/16 28/22 30/25
**doing [2]** 12/11 14/5
**don't [47]**
**done [3]** 23/25 25/10 25/21
**down [2]** 10/7 11/16
**DROOKS [1]** 2/10
**during [6]** 28/22 31/7 32/6
32/8 32/15 32/17
**duties [1]** 14/15
**duty [2]** 15/18 16/3

## E

**each [10]** 6/18 13/21 14/13
14/18 15/1 15/11 15/22 16/15
16/22 35/19
**earlier [1]** 33/8
**early [1]** 14/24
**easier [1]** 8/11
**easiest [1]** 8/15
**easily [2]** 25/20 29/10
**East [1]** 2/11
**eight [1]** 22/15
**else [3]** 12/17 19/23 33/2
**embassy [1]** 23/1
**emergency [1]** 3/14
**employer [3]** 18/15 36/10
36/11
**employment [2]** 36/10 36/14
**enormous [1]** 21/11
**ensure [5]** 5/20 26/13 30/6
30/11 32/22
**ensures [2]** 16/19 34/5
**ensuring [1]** 14/24
**entered [1]** 33/8
**enterprise [1]** 8/3
**entire [2]** 33/8 36/5
**entirely [3]** 9/18 14/1 14/8
**entitled [1]** 38/7
**especially [1]** 28/9
**essentially [1]** 8/23
**even [8]** 5/13 9/23 25/25
27/24 29/16 31/14 31/21
35/13
**event [2]** 16/14 26/16
**ever [1]** 7/18
**every [8]** 6/15 10/8 11/16
13/18 14/19 21/16 22/11 28/8
**everyone [1]** 4/10
**everyone's [1]** 14/3
**everything [5]** 8/6 8/9 34/18
36/22 36/25
**evidence [5]** 7/16 7/17 11/19
12/20 12/24
**exact [2]** 18/8 27/7
**exactly [1]** 9/18
**exaggerating [2]** 23/19 23/20
**excessive [3]** 21/22 22/18
22/24
**expanded [1]** 6/24
**expect [1]** 20/12
**explain [3]** 9/12 22/12 23/25
**expressed [1]** 14/23

## F

**extent [2]** 13/3 34/21
**extradited [1]** 4/7
**extradite [2]** 12/12
**extradited [3]** 4/24 5/6 26/5
**extradition [6]** 21/14 24/17
26/1 26/1 27/14 33/23
**eye [2]** 20/16 20/22
**eyes [1]** 23/19

## F

**facing [1]** 22/11
**fact [7]** 4/21 5/3 12/6 12/8
33/5 33/14 33/17
**failure [2]** 32/22 32/23
**fair [1]** 9/5
**falls [1]** 30/17
**families [1]** 14/16
**family [2]** 15/19 26/23
**favor [1]** 4/20
**feel [3]** 32/2 34/4 34/7
**few [1]** 10/5
**File [1]** 36/18
**filed [1]** 3/21
**find [4]** 5/4 7/13 22/17 26/3
**fine [4]** 11/20 20/23 24/7
34/9
**firms [1]** 10/13
**first [5]** 31/2 31/4 35/7
36/18 37/7
**five [2]** 21/19 22/15
**FLA [1]** 1/8
**fled [1]** 29/17
**flee [14]** 5/10 5/14 5/19
11/20 13/24 14/3 26/7 26/16
27/25 28/6 33/12 33/22 34/1
34/3
**fleeing [4]** 5/21 15/7 32/24
33/18
**flight [7]** 22/19 24/21 26/5
27/23 28/4 30/7 33/6
**flights [2]** 20/16 20/22
**flip [1]** 16/9
**Floor [2]** 2/6 2/12
**folks [1]** 13/7
**following [1]** 34/21
**follows [1]** 35/9
**forbidding [1]** 7/23
**foregoing [1]** 38/5
**forgot [1]** 3/22
**formally [1]** 27/13
**format [1]** 38/8
**found [4]** 4/22 18/24 27/22
**founders [1]** 10/22
**four [4]** 5/4 5/6 21/19 28/18
**frankly [3]** 9/8 9/23 27/23
**free [12]** 7/12 7/14 7/18
7/22 7/23 8/16 8/21 9/19
11/4 11/6 13/4 13/12
**freedom [2]** 26/14 26/22
**freely [2]** 18/11 19/13
**frequency [1]** 29/19
**frequently [1]** 22/8
**FRIDAY [3]** 1/15 3/1 37/3
**friends [1]** 15/19
**front [2]** 28/15 36/18
**fugitive [2]** 10/6 12/13
**ful [1]** 33/12
**full [1]** 4/16
**Fund [1]** 13/13
**further [1]** 37/10
**future [1]** 21/9

## G

**gather [1]** 9/25
**general [1]** 6/3
**generally [1]** 20/23
**generis [1]** 33/25
**get [2]** 11/8 11/13 11/18

## H

17/16 18/8 19/4 19/17 25/14
26/19 27/3
**getting [1]** 28/24
**given [13]** 12/21 14/9 15/20
16/7 21/20 21/20 22/18 25/6
26/18 28/3 28/3 28/9 35/2
**gives [1]** 36/8
**giving [1]** 26/21
**go [9]** 8/11 8/13 17/9 19/5
19/22 22/25 29/21 33/10
36/17
**going [27]**
**gone [2]** 17/9 29/12
**Good [3]** 3/8 3/11 17/13
**Google [1]** 23/24
**got [6]** 5/11 10/9 10/24
23/15 23/16 29/7
**government [13]** 5/18 7/18
9/20 10/7 10/23 12/7 12/19
15/2 15/6 19/1 23/5 24/9
27/25
**government's [1]** 5/3
**GPS [7]** 6/1 17/15 18/19 21/2
28/13 30/2 30/13
**grandmother [2]** 3/24 4/3
**grant [2]** 4/12 13/9
**granted [3]** 4/16 34/20 35/8
**grave [2]** 5/19 26/8
**great [3]** 12/3 17/11 37/9
**greater [2]** 34/1 35/13
**group [3]** 10/14 10/15 35/18
**groups [1]** 10/24
**guidance [1]** 27/15
**guided [1]** 27/5
**guidelines [1]** 28/4

## H

**had [14]** 4/16 7/9 7/18 7/18
9/19 15/25 24/21 25/25 27/6
29/3 29/17 33/9 33/11 34/23
**half [1]** 27/7
**hand [2]** 5/16 30/24
**handle [2]** 36/18 36/19
**happen [3]** 25/2 25/11 33/3
**happened [1]** 32/7
**happens [1]** 5/12
**happy [6]** 6/4 8/9 21/4 27/1
30/9 36/18
**hard [1]** 14/9
**has [40]**
**hash [1]** 33/1
**hasn't [2]** 12/20 31/10
**have [69]**
**having [8]** 10/25 13/7 14/12
14/18 15/3 15/8 16/12 30/15
**he [92]**
**hear [8]** 3/17 6/1 6/4 7/2
7/3 21/4 24/12 28/11
**heard [2]** 14/6 30/15
**hearing [3]** 4/13 27/12 33/1
**heart [1]** 27/24
**hearts [1]** 27/24
**heck [1]** 26/8
**held [1]** 38/6
**Hello [1]** 3/10
**help [2]** 11/20 34/21
**helpful [2]** 6/18 35/3
**helping [1]** 11/19
**here [19]** 3/19 4/11 4/19 5/8
5/19 6/4 14/25 19/1 21/6
21/7 23/3 25/2 25/23 26/12
26/12 27/6 27/18 28/6 33/25
**hereby [1]** 38/4
**high [1]** 23/15
**him [41]**
**his [33]**
**home [10]** 16/20 28/20 29/3
29/11 29/15 29/15 31/7 31/9
31/20 32/8

**H**

**Hong [14]**   7/9 8/4 9/16 10/6
10/18 10/22 11/1 11/7 11/12
11/13 11/19 12/3 12/8 12/21
**Honor [72]**
**HONORABLE [1]**   1/3
**hope [2]**   3/17 22/17
**horrible [1]**   17/24
**hostages [1]**   23/1
**hour [1]**   22/2
**hours [5]**   28/8 29/16 31/10
31/21 32/16
**house [1]**   19/9
**how [4]**   7/3 7/24 9/18 28/13
**however [3]**   7/13 8/9 23/5
**huge [1]**   14/16
**hundred [1]**   33/20
**husband [1]**   5/16
**hyperbole [1]**   11/11

**I**

**I'm [7]**   3/17 3/22 4/14 6/25
7/16 25/12 36/10
**imagine [3]**   9/20 20/16 20/17
**immediate [5]**   6/6 17/16
29/13 30/6 32/22
**immediately [2]**   17/8 30/22
**imperative [1]**   14/22
**important [1]**   21/6
**impose [2]**   28/5 35/15
**imposed [1]**   22/3
**inadvertently [1]**   33/7
**incarcerated [1]**   24/18
**incarceration [1]**   29/3
**incentive [2]**   16/7 21/13
**inclined [6]**   5/25 6/8 6/23
8/20 13/20 14/8
**included [1]**   9/20
**includes [1]**   10/13
**including [2]**   10/9 36/9
**inconvenience [1]**   22/4
**increase [1]**   36/4
**incredibly [1]**   9/3
**indirect [1]**   10/25
**indirectly [1]**   11/13
**individual's [1]**   22/1
**indulgence [1]**   27/2
**initial [2]**   8/7 9/21
**instance [1]**   6/13
**intend [3]**   11/24 21/13 21/15
**intended [1]**   3/14
**intent [1]**   7/7
**intention [1]**   33/11
**interest [2]**   19/1 22/2
**interests [1]**   26/11
**international [2]**   10/13
23/18
**internationally [1]**   17/21
**Internet [1]**   25/19
**interpretation [3]**   24/22
24/23 25/4
**interpreter [3]**   3/22 4/5 4/7
**interpreting [1]**   3/23
**interstate [1]**   19/13
**intra [1]**   26/19
**intra-district [1]**   26/19
**intrusive [2]**   28/9 30/6
**invitation [1]**   34/13
**involve [1]**   20/11
**involved [3]**   7/19 20/16 22/5
**involves [1]**   31/5
**involving [1]**   21/11
**is [109]**
**isn't [2]**   10/14 32/11
**issue [8]**   14/18 17/23 21/1
21/2 21/19 25/7 25/8 25/23
**issues [2]**   9/17 21/11
**it [109]**

**itinerary [4]**   18/15 19/6
30/25 33/18
**its [1]**   8/7 8/15
15/3 15/10 26/22 35/17
**itself [1]**   4/16

**J**

**jail [3]**   23/4 26/9 27/9
**JEAN [1]**   1/3
**job [1]**   22/16
**JOHN [2]**   2/5 3/8
**Joseon [11]**   7/13 7/15 7/18
7/22 7/24 8/16 8/21 9/19
11/4 13/4 13/12
**judge [6]**   1/4 3/21 4/9 5/12
34/7 36/17
**Judicial [1]**   38/9
**Jumin [1]**   3/12
**just [32]**
**JUSTICE [1]**   2/4
**JWF [1]**   3/6

**K**

**KATIE [2]**   1/19 38/12
**keep [9]**   8/20 12/14 13/11
15/7 16/13 24/11 26/25 28/22
34/14
**keeping [1]**   31/13
**keeps [1]**   23/23
**kind [4]**   9/5 30/10 31/5 31/9
**know [32]**
**known [1]**   5/17
**knows [2]**   5/13 22/7
**Korea [1]**   9/17
**Korean [3]**   4/6 8/25 9/2
**Korean-American [2]**   8/25 9/2

**L**

**lack [1]**   28/3
**landed [1]**   27/12
**language [2]**   4/6 18/9
**large [1]**   9/4
**last [3]**   20/5 27/3 34/23
**late [1]**   6/9
**later [2]**   21/3 21/3
**law [3]**   10/13 23/4 24/19
**lead [2]**   30/18 31/15
**leaders [1]**   10/14
**least [6]**   14/4 15/11 17/1
27/19 31/9 35/18
**leave [4]**   6/1 12/25 29/11
32/8
**LEE [14]**   2/11 3/12 8/17
12/16 14/6 19/10 19/25 24/12
25/14 26/25 32/19 34/21
35/21 37/2
**left [3]**   29/14 31/20 31/20
**legal [4]**   21/11 22/21 24/14
25/3
**less [5]**   25/23 28/5 28/9
30/6 30/18
**lesser [1]**   35/15
**let [3]**   17/8 18/8 27/9
**let's [1]**   18/23
**levied [1]**   16/8
**liberty [1]**   22/1
**life [6]**   15/21 15/24 21/14
22/14 22/16 26/22
**lightly [1]**   22/3
**like [11]**   3/12 7/3 8/22
11/24 14/20 17/24 19/6 19/23
20/3 27/3 37/3
**LINCENBERG [1]**   2/10
**LINK [15]**   7/7 8/16 8/23 8/23
9/1 9/5 10/9 10/9 11/14
11/19 12/15 12/21 13/5 13/11
35/10
**listen [1]**   27/1
**little [5]**   5/9 6/9 9/12

**1076**

**local [1]**   35/13
**location [16]**   6/1 6/5 7/4
17/6 21/2 22/2 22/8 28/10
28/14 28/17 29/1 29/5 29/20
29/24 32/21 36/3
**long [4]**   5/11 8/4 18/18
32/11
**longer [1]**   10/20
**look [4]**   18/16 27/15 32/20
34/25
**looked [1]**   12/5
**looking [1]**   18/9
**LOS [5]**   1/14 1/21 2/6 2/12
3/1
**lot [3]**   11/11 25/23 26/8
**LULEJIAN [12]**   2/5 3/9 10/3
14/21 22/20 24/13 25/24 26/6
27/6 35/6 36/15 37/7

**M**

**MAGISTRATE [1]**   1/4
**maintains [1]**   18/19
**make [19]**   3/15 6/10 14/4
16/22 17/10 18/16 23/16
28/21 31/11 32/2 32/11 35/3
35/7 35/19 35/22 35/25 36/16
36/19 37/6
**making [3]**   12/22 13/19 16/20
**manner [1]**   31/9
**many [1]**   24/15
**MARELLA [1]**   2/10
**Martinez [3]**   4/11 34/22 35/4
**Mary [1]**   4/7
**matter [4]**   22/21 24/14 25/3
38/7
**maximum [2]**   4/25 31/15
**may [5]**   13/10 28/24 34/6
34/7 36/7
**maybe [4]**   19/2 19/3 29/16
31/16
**me [18]**   3/22 4/9 6/11 9/12
10/21 11/18 18/8 20/23 23/7
25/14 26/25 28/15 29/2 32/5
34/8 36/16 36/19 36/19
**mean [5]**   11/15 15/5 15/23
17/25 18/24
**means [4]**   14/24 25/12 28/9
28/12
**mechanisms [1]**   15/5
**medical [1]**   3/14
**meet [1]**   36/15
**meeting [1]**   22/11
**members [1]**   10/13
**memorandum [1]**   18/10
**mentioned [3]**   30/2 31/4 31/4
**Mercado [1]**   17/14
**methods [1]**   34/14
**middle [1]**   32/9
**midnight [5]**   6/10 18/22
20/13 35/25 36/1
**might [1]**   30/24
**miles [1]**   6/22
**mill [1]**   34/2
**million [2]**   11/9 11/10
**minimized [1]**   34/5
**minimum [2]**   15/11 28/11
**miss [1]**   36/23
**missed [1]**   20/5
**mistake [1]**   4/10
**mitigate [2]**   31/2 31/3
**modification [2]**   4/18 35/14
**modifications [2]**   34/24 35/1
**modified [1]**   5/24
**modifies [1]**   27/17
**modify [3]**   3/19 13/9 34/20
**monitor [7]**   16/3 29/19 30/14

**M**

monitor... **[4]**   30/18 30/20
  33/10 33/15
monitoring **[23]**
more **[4]**   8/5 9/13 32/2 33/5
moreover **[2]**   29/13 33/24
most **[7]**   4/22 5/20 17/25
  18/3 22/8 22/9 23/3
mother **[2]**   3/23 4/2
motion **[2]**   8/16 36/2
moving **[1]**   19/1
Mr **[5]**   14/25 16/7 23/1 27/9
  33/5
Mr. **[98]**
Mr. Ahn **[55]**
Mr. Ahn's **[11]**   3/19 3/23
  7/21 15/18 15/21 15/24 18/8
  21/7 21/8 31/8 35/24
Mr. Hong **[10]**   7/9 8/4 9/16
  10/18 11/7 11/12 11/13 11/19
  12/3 12/21
Mr. Lee **[12]**   8/17 12/16 14/6
  19/10 19/25 24/12 25/14
  26/25 32/19 34/21 35/21 37/2
Mr. Lulejian **[10]**   10/3 14/21
  22/20 24/13 25/24 26/6 27/6
  35/6 36/15 37/7
Ms. **[4]**   3/13 4/11 34/22 35/4
Ms. Martinez **[3]**   4/11 34/22
  35/4
Ms. Rim **[1]**   3/13
much **[7]**   5/23 8/22 9/18 10/1
  14/19 18/5 26/14
must **[2]**   11/9 11/11
my **[13]**   3/13 5/6 5/16 6/20
  8/6 8/18 13/16 13/16 17/6
  17/11 19/10 24/22 35/23
myself **[1]**   30/5

**N**

Nacif **[1]**   27/15
name **[2]**   9/7 15/19
nationwide **[1]**   25/9
naturally **[1]**   15/25
necessarily **[1]**   16/1
necessary **[3]**   21/17 21/17
  28/7
need **[5]**   6/13 7/2 8/4 16/2
  27/5
needs **[3]**   24/10 25/11 26/22
NESSIM **[1]**   2/10
network **[1]**   11/1
next **[2]**   28/2 37/4
night **[1]**   19/9
nine **[1]**   22/15
Ninth **[6]**   5/13 21/16 24/19
  24/21 24/24 25/5
no **[11]**   1/8 4/23 7/16 7/17
  10/20 13/10 19/16 20/25 23/9
  36/24 38/12
No. **[1]**   3/6
No. CV **[1]**   3/6
Nobody **[1]**   28/1
nodding **[3]**   19/20 28/23
  28/23
North **[2]**   2/5 9/17
not **[59]**
note **[4]**   18/15 21/6 33/6
  36/9
noted **[1]**   33/7
nothing **[3]**   9/8 37/11 37/13
notice **[3]**   18/16 30/23 36/12
noticed **[1]**   31/22
notices **[1]**   30/25
notification **[5]**   6/6 17/16
  29/14 30/7 32/22
notion **[1]**   5/14
notwithstanding **[1]**   19/14

novel **[1]**   21/1
November **[2]**   1/17 33/1
now **[10]**   4/9 11/7 13/16
  14/10 14/15 21/4 30/12 30/19
  33/1 34/22
number **[3]**   10/13 21/24 24/25
numerous **[1]**   3/20
nuts **[2]**   23/8 23/9

**O**

object **[1]**   24/10
oblige **[1]**   28/5
obviously **[3]**   8/19 15/19
  17/21
off **[4]**   17/10 19/3 33/10
  33/15
offended **[1]**   34/8
offender **[1]**   25/17
offenders **[1]**   24/3
offenses **[1]**   22/9
OFFICE **[1]**   2/4
officer **[3]**   17/4 17/12 19/19
offices **[1]**   18/4
Official **[1]**   1/19
often **[1]**   22/9
okay **[4]**   8/14 18/2 18/7 34/8
once **[10]**   6/18 8/9 13/19
  13/21 14/4 14/11 15/3 16/16
  35/18 35/19
one **[30]**
ones **[5]**   4/20 12/22 23/2
  30/1 35/15
only **[12]**   6/5 13/21 15/22
  17/7 17/23 18/13 24/11 29/2
  29/18 29/19 30/13 30/16
opportunities **[1]**   22/17
opportunity **[1]**   33/13
opposed **[1]**   8/21
option **[1]**   31/4
options **[2]**   23/13 30/16
order **[19]**   4/12 8/25 9/21
  12/15 13/6 13/14 13/16 15/6
  16/22 20/18 23/25 26/22 33/8
  33/9 33/13 34/19 35/2 35/23
  36/21
orders **[2]**   34/9 34/25
organization **[9]**   7/14 7/15
  7/25 8/24 10/10 10/21 10/23
  11/21 12/23
organization's **[1]**   12/10
organizations **[1]**   10/9
originally **[1]**   3/20
other **[21]**
otherwise **[2]**   25/5 27/1
our **[10]**   9/22 10/20 11/5
  12/1 12/12 18/3 21/25 25/9
  27/16 35/13
out **[19]**   4/20 9/21 10/15
  10/16 11/2 11/3 12/13 15/2
  15/13 15/23 16/25 22/11
  23/13 27/9 30/4 32/18 33/1
  34/22 35/20
outset **[1]**   33/7
outside **[10]**   6/25 7/1 7/4
  17/19 17/20 18/20 24/8 26/19
  32/15 36/6
outward **[1]**   22/11
over **[2]**   9/4 22/25
overlap **[1]**   9/19
overnight **[1]**   36/14
overreach **[1]**   24/4
own **[1]**   13/16

**P**

P.M **[1]**   3/2
page **[2]**   18/9 38/7
Park **[1]**   2/11
part **[3]**   10/20 17/25 20/5

participant **[1]**   28/20
participants **[2]**   28/18 13/4
participated **[1]**   23/2
participating **[1]**   9/2
particular **[3]**   22/6 22/9
  32/5
party **[7]**   6/14 13/15 13/17
  30/10 31/18 35/10 35/17
pass **[1]**   3/12
pay **[1]**   26/21
PC **[1]**   2/10
Pegasus **[5]**   8/2 9/13 9/15
  10/1 13/13
penalties **[1]**   16/8
pending **[1]**   24/18
people **[17]**   11/3 11/9 11/11
  14/1 14/14 14/14 15/17 15/20
  15/23 16/2 16/6 16/11 16/11
  16/13 22/11 23/19 23/23
percent **[1]**   33/20
perform **[1]**   15/18
performing **[1]**   14/15
perhaps **[2]**   6/18 14/12
period **[2]**   15/13 31/7
permission **[2]**   18/13 19/5
person **[8]**   6/6 14/18 15/1
  15/3 15/11 15/22 17/8 29/8
person's **[2]**   29/1 29/5
personally **[2]**   5/9 19/2
perspective **[2]**   9/9 9/22
Phillip **[1]**   3/7
phone **[14]**   28/19 29/6 29/7
  29/11 29/11 29/14 31/1 31/5
  31/8 31/11 31/20 31/22 32/8
  32/11
pinpoint **[1]**   17/18
place **[8]**   5/22 6/1 8/20 20/1
  20/4 20/9 20/24 31/14
PLAINTIFF **[2]**   1/7 2/3
pleasant **[1]**   6/2
please **[1]**   4/5
plus **[1]**   16/4
point **[2]**   23/14 25/5
pointed **[1]**   4/20
portrayed **[1]**   10/10
position **[1]**   25/9
possibility **[2]**   5/15 15/7
possible **[2]**   4/25 26/14
potential **[1]**   16/8
practice **[1]**   23/11
predecessor **[1]**   7/25
prefer **[1]**   8/7
preliminary **[1]**   8/18
presence **[1]**   29/19
presented **[1]**   7/18
preserve **[1]**   25/8
president **[1]**   10/19
PRESIDING **[1]**   1/4
presumption **[2]**   26/2 33/24
pretrial **[22]**
pretrial's **[1]**   20/21
pretty **[1]**   27/16
prevalent **[1]**   8/24
prevent **[2]**   7/6 10/25
price **[1]**   26/20
probable **[2]**   4/23 5/4
probably **[3]**   6/9 8/11 16/16
problem **[5]**   10/8 15/4 18/18
  19/4 37/5
problems **[1]**   23/18
proceedings **[4]**   1/13 27/15
  37/15 38/6
programmed **[2]**   32/6 32/9
prohibits **[1]**   13/6
prone **[1]**   11/10
pronounce **[1]**   7/24
pronouncing **[1]**   13/5
proof **[1]**   18/15
proposed **[4]**   18/21 35/1

**P**
proposed... [2]   35/13 37/3
proposes [1]   18/10
protect [1]   12/11
provide [3]   6/6 12/24 18/14
provided [2]   12/20 36/8
provides [1]   19/6
provision [1]   13/24
pulled [2]   10/12 30/4
purpose [2]   19/15 36/14
purposes [4]   19/22 20/15
  24/9 36/6
pursuant [1]   38/4
push [2]   14/9 14/12
pushing [2]   25/7 34/15
put [1]   33/5
putting [2]   23/12 23/22

**Q**
question [3]   17/4 17/11 27/9
quick [1]   30/23
quickly [1]   7/17
quite [1]   14/19
quo [1]   14/10

**R**
radio [1]   29/18
raid [1]   13/3
railroad [1]   11/5
raised [1]   25/8
read [3]   10/19 24/14 24/16
really [9]   5/23 8/2 9/1
  11/23 13/23 22/4 24/10 26/5
  27/5
reason [3]   7/6 17/23 19/18
reasonable [3]   6/12 23/10
  23/14
reasonably [1]   27/20
reasons [1]   25/7
recall [1]   16/10
receiving [1]   32/16
recognition [1]   32/4
recognize [1]   5/17
reconsider [1]   5/9
record [2]   33/6 35/11
red [2]   20/16 20/22
reduce [6]   13/20 14/25 15/10
  16/21 35/10 35/24
reduced [1]   4/25
reduces [1]   16/12
reducing [1]   31/18
referred [2]   3/21 4/9
Reform [8]   21/23 22/23 27/6
  27/10 27/13 27/18 27/18 28/5
regard [1]   8/21
regular [1]   16/4
regularly [1]   15/8
regulations [1]   38/8
related [5]   8/18 9/1 9/17
  11/14 20/20
release [1]   3/20
relief [1]   4/12
relieve [1]   16/2
relieves [1]   14/19
remain [3]   7/11 16/7 20/1
remind [2]   15/16 16/6
remote [2]   5/15 17/24
removal [1]   36/3
remove [7]   6/8 11/6 13/10
  13/25 14/8 35/9 35/16
removed [3]   8/23 9/11 17/17
removes [1]   17/16
reported [1]   38/6
reporter [2]   1/19 7/16
REPORTER'S [1]   1/13
represented [2]   7/7 11/23
reputable [2]   11/21 12/22
reputation [1]   12/10

request [6]   3/19 13/9 18/8
  18/9 33/11 33/13
requested [2]   9/4 15/6
requests [1]   32/17
required [4]   7/20 13/18
  15/12 35/12
requirement [3]   14/1 31/13
  35/16
requirements [1]   31/3
respect [7]   12/6 12/14 22/23
  23/11 24/6 25/8 26/19
restraint [1]   25/11
restriction [4]   8/20 8/22
  9/10 35/9
restrictions [1]   18/20
restrictive [2]   27/20 28/5
result [1]   26/15
returned [1]   5/1
RHOW [1]   2/10
rid [1]   25/14
right [31]
Rim [1]   3/13
risk [10]   22/19 24/21 26/5
  26/15 27/23 28/4 33/6 33/18
  33/25 34/5
road [1]   5/11
Rocha [3]   3/21 34/7 36/17
roll [1]   23/19
ROSENBLUTH [1]   1/3
RPR [1]   38/12
rules [1]   35/13
ruling [1]   34/16
run [5]   23/16 30/18 30/19
  31/14 34/2
running [2]   14/24 30/20
runs [2]   23/17 23/21

**S**
said [10]   10/19 10/20 20/6
  24/14 24/15 24/20 24/21
  24/24 25/5 33/21
Salerno [2]   24/25 25/6
same [7]   12/2 18/4 21/23
  25/15 27/7 27/9 29/4
say [13]   6/23 8/17 9/15 10/4
  10/5 12/17 18/23 20/22 23/19
  24/13 24/17 33/21 35/11
saying [7]   11/22 15/22 16/1
  16/10 23/9 26/17 33/9
says [5]   18/10 18/14 24/19
  26/6 27/19
schedule [2]   31/25 32/1
scheduling [1]   35/22
sealing [1]   4/12
Section [1]   38/4
security [1]   15/20
see [12]   6/13 6/22 7/6 7/10
  11/22 16/9 16/14 18/23 23/24
  23/25 25/20 30/5
seem [1]   24/16
seems [3]   6/11 11/24 29/2
sees [1]   31/8
sentence [1]   5/1
SEPTEMBER [2]   1/15 3/1
serious [6]   4/22 14/2 18/25
  21/10 23/20 26/15
service [1]   17/25
services [7]   17/4 17/12
  17/14 18/13 19/14 19/19 24/8
services' [1]   19/17
seven [2]   15/13 22/15
several [2]   14/15 34/23
sex [3]   22/9 24/3 25/17
she [6]   3/13 3/14 3/15 3/18
  28/23 34/25
short [1]   30/17
should [7]   11/8 16/14 24/18
  26/4 28/11 35/11 36/15
shouldn't [1]   37/5

show [2]   35/6 37/6
showed [1]   14/5
shut [1]   11/16
side [3]   5/3 14/17 16/9
sides [2]   4/19 26/11
significant [1]   22/1
significantly [3]   4/25 22/14
  34/1
signing [1]   19/3
simply [4]   12/20 14/17 15/4
  29/15
since [2]   8/15 10/21
sitting [2]   23/4 26/9
six [1]   22/15
small [2]   26/20 33/23
so [74]
so-called [1]   13/3
social [2]   22/5 23/23
solve [1]   15/4
some [19]   4/17 5/22 6/11 7/2
  8/3 11/18 15/18 17/23 17/24
  19/7 19/18 20/1 25/11 25/11
  25/18 26/9 28/21 30/10 31/9
somebody [11]   11/19 13/19
  16/19 16/25 25/16 29/3 29/7
  29/14 30/25 31/22 32/10
somehow [1]   12/9
someone [2]   22/10 24/17
something [7]   6/10 19/6 20/3
  22/3 29/3 33/2 34/4
somewhat [1]   16/24
somewhere [3]   17/9 26/9
  36/13
soon [1]   5/14
sooner [1]   37/9
sophisticated [1]   10/11
sorry [7]   3/17 3/22 4/14 7/1
  7/16 25/12 36/11
sort [10]   6/5 8/3 19/7 23/17
  25/3 28/21 29/18 30/5 30/7
  32/6
sorts [2]   17/5 17/5
Spain [5]   5/2 12/12 18/25
  21/14 22/25
Spanish [2]   7/14 7/19
speak [1]   8/10
speaking [1]   7/17
speaks [2]   33/14 33/17
special [1]   26/3
specific [1]   29/20
speculation [1]   11/24
spirit [1]   21/22
spread [4]   15/2 15/13 16/25
  35/20
Spring [1]   2/5
stakes [1]   21/11
stands [1]   35/2
start [2]   8/14 30/20
started [3]   8/4 9/16 15/25
state [1]   20/16
stated [1]   7/21
states [14]   1/1 1/4 1/6 2/3
  3/9 7/1 17/22 18/1 18/12
  19/8 33/25 37/11 38/5 38/9
stationary [2]   31/9 32/11
status [1]   14/10
statute [5]   7/20 24/14 24/16
  24/23 25/4
stay [1]   36/13
stayed [1]   33/15
staying [1]   20/12
stenographically [1]   38/6
stigma [3]   22/5 23/23 25/22
still [7]   6/16 9/24 15/24
  16/18 18/22 26/4 31/12
strangers [1]   15/17
Strategies [5]   8/2 9/13 9/15
  10/1 13/13
Street [2]   1/20 2/5

## S

**strike [4]**    5/19  26/10  26/21  34/10
**strong [7]**    16/6  19/1  21/13  26/2  26/11  26/14  33/23
**strongest [1]**    5/21
**student [1]**    8/23
**stuff [2]**    6/11  20/21
**subject [7]**    5/1  14/2  20/21  21/21  21/23  22/2  27/19
**submit [8]**    21/12  27/22  28/4  31/1  31/12  35/1  37/2  37/8
**submitted [1]**    35/12
**such [1]**    34/3
**suggesting [1]**    24/3
**suggestion [1]**    12/9
**sui [1]**    33/24
**Suite [1]**    1/20
**support [2]**    4/23  26/23
**supposed [5]**    14/5  17/9  29/9  30/12  32/23
**Supreme [1]**    21/17
**sure [14]**    13/4  14/4  14/14  15/15  16/20  18/17  23/16  27/4  28/21  32/11  35/7  35/22  36/19  37/6
**suspicious [1]**    31/9
**system [2]**    28/19  29/2

## T

**take [9]**    11/2  12/8  19/23  20/22  25/17  33/9  33/15  34/6  34/13
**talk [2]**    8/8  33/2
**talked [2]**    23/18  26/18
**talking [2]**    14/11  32/4
**tarnished [1]**    12/10
**technology [1]**    29/18
**tell [3]**    5/16  25/19  29/8
**telling [3]**    20/11  23/7  25/9
**tells [1]**    29/21
**ten [1]**    7/10
**tentative [1]**    19/12
**term [1]**    22/7
**than [6]**    24/3  25/23  26/9  32/21  34/1  36/14
**Thank [5]**    4/8  18/5  19/11  33/4  37/14
**that [271]**
**That's [2]**    3/25  32/13
**their [12]**    9/7  10/19  14/16  15/18  16/2  23/19  27/24  29/6  29/7  29/11  29/14  29/19
**them [28]**
**themselves [1]**    7/21
**then [7]**    5/12  5/22  19/17  19/25  24/23  34/9  36/19
**theoretically [1]**    29/6
**there [53]**
**therefore [4]**    4/24  5/5  7/23  22/22
**these [20]**
**they [55]**
**THIBODEAUX [2]**    1/19  38/12
**thing [4]**    6/3  28/15  29/4  34/3
**things [5]**    8/8  10/5  12/4  24/2  25/15
**think [91]**
**thinking [2]**    6/20  25/15
**thinks [1]**    28/1
**third [9]**    2/12  6/14  13/15  13/17  13/18  30/10  31/18  35/10  35/16
**this [52]**
**those [9]**    4/24  5/6  8/6  13/7  19/10  21/20  28/12  30/1  33/12
**though [1]**    13/25

**thought [1]**    14/24
**thoughts [1]**    15/2
**three [9]**    4/7  16/19  17/1  21/19  21/21  31/18  33/12  33/12  34/23
**through [10]**    15/2  15/13  21/15  21/16  21/17  24/8  29/5  30/13  32/3  35/20
**throughout [3]**    16/25  18/1  18/12
**tied [1]**    15/21
**ties [1]**    10/9
**time [14]**    5/14  8/4  8/8  8/12  8/14  12/2  20/17  20/20  27/3  28/22  30/19  31/16  32/5  32/18
**times [5]**    16/19  17/1  30/11  31/18  32/6
**Title [1]**    38/4
**today [3]**    3/14  10/12  21/8  37/3
**told [1]**    4/11
**too [5]**    7/17  14/9  26/14  32/11  37/9
**took [1]**    23/1
**total [3]**    17/2  22/15  31/19
**touch [2]**    11/13  16/13
**towards [1]**    14/12
**track [4]**    10/7  24/11  28/22  28/25
**tracked [1]**    23/15
**tracks [1]**    17/17
**transcript [3]**    1/13  38/6  38/7
**transfer [1]**    24/19
**travel [20]**
**traveling [4]**    6/25  18/19  18/21  20/15
**trial [1]**    27/21
**trip [3]**    19/24  20/3  20/8
**true [1]**    38/5
**try [2]**    5/20  27/3
**trying [11]**    10/25  11/15  11/16  12/1  12/11  12/12  20/14  26/10  26/13  26/25  27/8
**Tuesday [1]**    37/4
**Twelfth [1]**    2/6
**Twenty [1]**    2/12
**Twenty-Third [1]**    2/12
**twice [1]**    14/10
**two [8]**    4/22  4/24  10/13  21/19  27/7  31/3  31/19  33/8
**two-and-a-half [1]**    27/7
**type [2]**    22/9  29/24
**types [1]**    28/17

## U

**U.S [3]**    1/19  2/4  2/4
**umbrage [1]**    12/8
**under [5]**    7/13  18/20  23/4  24/1  31/14
**underground [1]**    11/5
**understand [6]**    9/14  9/16  11/25  26/6  34/12  34/15
**understanding [2]**    13/16  17/7
**Understood [2]**    20/25  35/5
**unfortunately [1]**    30/7
**unique [1]**    21/10
**UNITED [13]**    1/1  1/4  1/6  2/3  3/9  7/1  18/1  18/12  19/8  33/25  37/11  38/5  38/9
**unlikely [1]**    26/16
**unmonitored [1]**    32/17
**unusual [1]**    25/20
**up [4]**    30/10  33/2  34/6  34/13
**us [1]**    22/4
**USA [1]**    3/6
**use [5]**    11/13  15/6  17/21  18/4  24/2

## V

**verifies [1]**    29/5
**verifying [1]**    36/10
**versus [1]**    3/7
**very [24]**
**video [8]**    6/15  6/19  13/15  13/19  16/15  17/1  31/13  35/18
**violent [1]**    25/18
**virtual [4]**    29/4  30/17  30/24  31/15
**voice [1]**    32/3
**volumes [2]**    33/14  33/17
**volunteer [1]**    8/24
**volunteered [1]**    14/23

## W

**waited [1]**    33/16
**want [11]**    4/10  5/19  8/10  11/8  14/6  15/16  15/19  20/18  21/3  24/13  33/6
**wanted [6]**    8/17  10/4  11/13  12/17  19/4  30/4
**wants [9]**    6/21  12/14  14/25  15/10  19/23  24/8  36/5  36/13  36/19
**warrant [1]**    4/18
**was [28]**
**wasn't [2]**    31/22  32/9
**way [9]**    10/1  11/8  24/11  30/11  30/13  30/16  32/21  34/23  35/11
**ways [3]**    12/3  15/8  31/2
**we [79]**
**wear [1]**    6/2
**week [24]**
**weekend [6]**    4/15  19/5  19/24  33/9  33/12
**weeks [1]**    33/8
**welcome [2]**    18/6  34/6
**well [10]**    3/17  9/9  11/10  11/18  19/16  20/10  28/15  28/24  31/17  34/6
**went [2]**    10/11
**were [13]**    5/18  14/2  19/18  25/15  26/7  26/16  27/8  29/9  29/15  29/17  33/19  34/1  34/3
**weren't [3]**    26/12  26/12  29/9
**West [1]**    1/20
**WESTERN [1]**    1/2
**what [29]**
**whatever [2]**    16/4  25/18
**when [17]**    4/14  4/15  12/11  16/16  18/21  24/14  24/16  27/8  28/23  29/1  29/21  29/21  31/6  32/8  32/9  33/12  37/2
**where [13]**    11/25  17/18  17/24  20/11  21/14  25/16  29/8  29/9  30/11  32/22  33/16  34/2  34/10
**wherever [1]**    33/10
**whether [3]**    11/14  12/14  27/8
**which [9]**    4/13  7/19  10/12  25/6  27/10  28/17  29/19  30/16  32/4
**while [4]**    10/14  27/13  30/25  31/14
**who [14]**    3/23  5/13  13/17  13/19  14/1  15/17  15/20  16/11  16/13  22/10  22/24  23/1  35/17  36/17
**whole [1]**    4/13
**why [4]**    7/10  8/14  18/23  22/12
**wife [1]**    19/5
**will [30]**
**willing [1]**    19/2
**wish [1]**    26/11
**wishes [2]**    5/6  26/12
**within [5]**    10/24  18/11  19/8

**W**

**within... [2]**   19/13 24/7
**without [2]**   4/13 26/14
**WOLPERT [1]**   2/10
**won't [1]**   34/8
**word [1]**   25/17
**words [1]**   5/21
**work [10]**   17/19 17/22 18/14
 18/19 18/22 19/16 19/22
 20/20 35/21 36/6
**works [3]**   7/4 17/20 17/25
**would [73]**
**wouldn't [2]**   4/13 14/9
**written [1]**   35/12
**wrong [3]**   5/17 24/22 34/6

**Y**

**years [10]**   7/10 9/4 10/7
 14/15 21/19 21/22 21/24
 22/15 27/7 34/23
**Yes [7]**   4/6 9/14 19/21 20/2
 20/14 21/5 29/23
**Yi [1]**   4/7
**you [97]**
**your [80]**

**Z**

**zone [1]**   20/17